CLYDE MORRIS, *Plaintiff in Error*, v. STATE OF FLORIDA, *Defendant in Error*.

En Banc.

Opinion filed October 16, 1930.

*Joseph M. Cheetham,* for Plaintiff in Error;

*Fred H. Davis,* Attorney General, and *Roy Campbell,* Assistant, for Defendant in Error.

ANDREWS, Commissioner:

Plaintiff in error, Clyde Morris, was indicted in the Circuit Court of Dade County, jointly with Stanford Morris, William McKenney and LaMar Penney, for murder in the first degree in the unlawful killing of George Adams at Kendall, near Miami. At a former term of said court a severance was granted as to McKenney, who was put on trial and a verdict rendered for murder in the second degree. The record does not show the disposition of the charge against Penney.

On June 17, 1929, Clyde and Stanford Morris were put on trial which resulted in the conviction of Clyde Morris for murder in the second degree and murder in the third degree for Stanford Morris. Clyde Morris was sentenced to the State prison for a period of twenty years, after a motion for new trial was denied, and he took this writ of error.

The evidence upon the issues of the trial covers over five hundred pages of the transcript. There are 112 pages covering the examination of jurors upon which no assignment of error is based and to which no reference is made in briefs. It therefore unnecessarily incumbers the record

at the expense of Dade County under the order of insolvency.

The four defendants were mere youths, each being under twenty-one years of age. The undisputed evidence shows that Clyde Morris, the oldest of the four, had been engaged in delivering intoxicating liquors from near his father's house, and that about one o'clock on the night of the shooting all four youths occupying a Ford coupe, driven by one of them, and having with them something over two cases of liquor, passed, and stopped about three hundred feet beyond, Adams' filling station and lunch room at Kendall, on the highway just south of Miami. They were armed with at least two revolvers and went back and called Adams, ostensibly to get some gasoline, but according to the theory of the State, the main purpose was to "stick him up." At least three, if not all, the boys appeared at Adams' door which led to his bedroom on second floor and when he came out to the gas tank he was seized by the boys from behind and in the scuffle Adams was shot down from behind by one of the boys, from which wound he died at a hospital the following night. One of the defendants, Stanford Morris, received a shot apparently from the gun of Adams from which he had recovered at the time of his trial.

Clyde Morris and McKenney were found by the police about daylight of that morning asleep in the Ford coupe which contained the two cases of liquor. The car was bloody inside and both occupants were under the influence of intoxicating liquors. A revolver was taken from McKenney at the time they were arrested.

Adams, from where he fell, called a near neighbor, Charles Russell, at his home about 150 feet away, who took him to the hospital with the assistance of Mr. Mew, another neighbor. Russell testified as to hearing pistol shots, also as to conditions and statements of deceased immediately

after the shooting and on the way to the hospital. The defendants, Clyde Morris, Stanford Morris and William McKenney made separate statements soon after the killing which were taken down by the assistant court reporter in the presence, and at the instance, of Mr. Bing, who was deputy sheriff and special criminal investigator for Dade County assigned to the State Attorney's office. These statements tended to corroborate deceased's statement. The statement of McKenney was signed and sworn to but those of Clyde and Stanford Morris were not. The substance of these statements was denied at the trial by the same defendants. Their admission in evidence was also assigned as error.

Plaintiff in error first insists that error was committed in admitting in evidence the testimony of Dr. Elder as to the statements made by deceased about eight o'clock of the morning on which the shooting occurred. The ball which caused Adams' death passed from the back clear through the body, severing a kidney, and he was too weak and ill to undergo an operation about an hour or two after he was shot. At 8 o'clock the following morning Adams aroused and at that time the doctor states that he made the statement here objected to. Later in the day he again lapsed into unconsciousness from which he never recovered, dying during the night.

The testimony of Dr. Elder indicates plainly that Adams was conscious of the fact that he was mortally wounded. He testified: "This man knew unquestionably, that he had been mortally wounded. * * * He told me that he felt like it; that he would not last very long. He said he felt like he wasn't going to get well."

It is not necessary that the preliminary foundation for a dying declaration should be proved by expressed utterances of decedent. Copeland v. State, 58 Fla. 26, 50 So. R. 621.

Kirkland v. State, 93 Fla. 172, 111 So. R. 351. It is a mixed question of law and fact for the judge to decide, before permitting the introduction of a dying declaration, whether decedent at the time knew that his death was imminent and inevitable. Lester v. State, 37 Fla. 382, 20 So. R. 232; Copeland v. State, *supra*; Bennett v. State, 66 Fla. 369, 63 So. R. 842; Frier v. State, 92 Fla. 241, 109 So. R. 334. Whether sufficient predicate has been laid for admission of a dying declaration is for the trial court, every presumption being in favor of its correctness. Kirkland v. State, *supra*.

It is argued that the evidence of Doctor Elder does not show that deceased at the time of making statement was "without hope of recovery."

If a person "knew, unquestionably, that he had been mortally wounded * * * would not last long," and "wasn't going to get well," it is obvious that he "was without hope of recovery," and not that he "merely considered himself in imminent danger." The fact that dying declarations are made in response to questions asked the decedent is no ground for excluding them. Richard v. State, 42 Fla. 528, 29 So. R. 413. In fact the statements made by deceased to Doctor Elder called no name, but referred to his assailant only as "that same bunch;" it therefore does not tend to incriminate any particular person or persons.

In substance deceased stated that they called him and said they wanted to get gasoline and after asking them several questions he went out to deliver it when they struck him from behind and jumped on him, and when he tried to defend himself they shot him. This statement with the written statements of the three defendants strongly supported the theory of the State as to the motive for the homicidal assault, and even if it had not the predicate of belief in impending death it was amply laid in view of the mortal wound and all the circumstances as to the shot striking a

vital organ, the lapse into unconsciousness and dying within a day from the time he was shot. A dying declaration is admissible although there is other testimony touching the same matters. Ward v. State, 75 Fla. 756, 79 So. R. 699.

The question of the admissibility of the declaration as given by Doctor Elder is discussed above more at length and more fully in view of the fourth and fifth assignments of error which are based upon the admission in evidence of the testimony of Charles Russell as to similar statements made by the deceased immediately after the shooting and on the way to the hospital.

The evidence referred to in discussing the previous assignment shows that a mortal wound had been inflicted; that immediately after deceased was shot he crawled to Russell's back door through the water and "slumped down" and thereafter was revived by Russell; that blood was flowing freely from the wound, his shoes and clothes; that deceased was in great agony and said: "I think they have got me this time" (It appears that his place of business had been "stuck up" before this.); that on the way to the hospital he "rolled down on the floor of the car, he was in such agony he could not keep still."

In the case of Coatney v. State, 61 Fla. 19, 55 So. R. 285, this Court said:

"In a prosecution for homicide evidence of declarations made by the deceased before his death as to facts that actually caused his subsequent death or as to circumstances that actually resulted in his subsequent death, is admissible either for or against the deceased, upon predicate being laid, where such declarations were made at a time when the deceased was *in extremis* and really believed he could not recover, and where the deceased would have been competent to testify as to such facts or circumstances had he lived."

The testimony as to statements of deceased were confined by the court in substance to the act of the killing, position of persons, what was said by parties involved, what instruments were used and in substance excluded everything except what related to the *res gestae*. This is the proper procedure, as announced by this Court in a number of cases. Clemmons v. State, 43 Fla. 200, 30 So. R. 699; Malone v. State, 72 Fla. 28, 72 So. R. 415; Ward v. State, 75 Fla. 756, 79 So. R. 699; Sealey v. State, 89 Fla. 439, 105 So. R. 137.

No error was committed in admitting in evidence the testimony of Dr. Elder and that of Russell, and if there was no error in admitting their testimony there likewise was no error committed in denying the motion to strike their testimony presented by another assignment of error.

The next two assignments of error relate (1) to the admission in evidence of the unsigned and unsworn statement of Clyde Morris and (2) the denial of the motion to strike the same evidence.

It is argued by plaintiff in error that the above-referred to confession or statement of Clyde Morris was secured against his will illegally and was improperly admitted, and therefore constituted error.

This Court in several instances has adhered to the rule that a confession is admissible in evidence when it is freely and voluntarily made by the accused and is uninfluenced by any threat, promise, fear, hope, or other illegal inducement, even though the accused be under arrest and in prison at the time, and such confession be made to the officer having the accused in custody. Nickels v. State, 90 Fla. 659, 106 So. R. 479, citing Green v. State, 40 Fla. 191, 23 So. R. 851; McNish v. State, 47 Fla. 69, 36 So. R. 176; Sims v. State 59 Fla. 38, 52 So. R. 198; Williams v. State, 48 Fla. 65, 37 So. R. 521; Moore v. State, 68 Fla. 91, 66 So. R. 431; MacDonald v. State, 70 Fla. 250, 70 So. R, 24.

In the above case of Nickels v. State, it was also held that a written statement signed by defendant, consisting of questions and answers and contradictory to other statements was admissible as conflicting statements.

There is no rule of evidence requiring extra-judicial statements, admissions or confessions, to be in writing or to be signed or to be sworn to, as a prerequisite to admission in evidence. Any person in whose presence a statement or confession was made may testify orally as to such statement. A similar point was presented in the case of Deiterle v. State, 98 Fla. 739, 124 So. R. 47, (cited by plaintiff in error here) where in this Court in discussing the issues there said:

"The written statement which was signed by the accused * * * was offered by the State and was admitted over the objection of the defendant. * * * It consists of questions and answers, the questions being propounded to the accused by the State Attorney, and the answers being made by the accused. It does not contain a confession of guilt of any unlawful degree of homicide. It does not admit that the accused took the life of Ollie Glass."

The written statement in the present case not being shown to have been made through fear or hope or to have been obtained through illegal influences was admissible as evidence of conflicting statements made by the accused concerning the shooting. He was also duly warned before making the statement. The case of Deiterle v. State, *supra*, was reversed, as given in the opinion, because "This statement (of Deiterle) and reasonable deductions to be gleaned and arrived at therefrom would not support the verdict. The evidence is otherwise insufficient to sustain the verdict;" and not because of the extra-judicial admissions

of the defendant being received in evidence. It will be observed that the testimony of the defendant Clyde Morris at the trial differs on material issues in the case from that contained in this written statement introduced in evidence. It was therefore admissible as a contradictory statement as affecting the credibility of the defendant who had voluntarily made himself a witness in the case.

"An accused, upon voluntarily becoming a witness, may be impeached by proper proof of contradictory statements previously made, not amounting to a 'confession of guilt,' illegally obtained." Dedge v. State, 68 Fla. 240, 67 So. R. 43; Herndon v. State, 72 Fla. 108, 72 So. R. 833, and cases there cited.

The next assignment presented for review is based upon certain remarks of the State Attorney in suggesting that the court call as a witness, William McKinney, indicted jointly with the defendant now on trial and who upon a severance at a former trial, had been convicted as one of the principals in the killing of Adams. The record shows that the State Attorney gave his reasons for not desiring to call McKinney as a witness and at the inception of the statement counsel for defendant objected to any statement in the presence of the jury, whereupon the State Attorney said: "All right, they may excuse the jury if they want to;" and no request being made, the statement of the State's Attorney was as follows:

"There is an alleged eye-witness to this tragedy, that is available, that, if he would, could enlighten the jury as to just what happened, perhaps. In my opinion he would, perhaps, be a hostile witness, and would, perhaps, attempt to conceal material facts, and to establish the innocence of the defendants at the

bar. But, nevertheless, I feel that he could be a very material witness, and under those conditions I don't feel that the State should be necessarily bound by his testimony; and for those reasons I ask the Court to call him as a witness for the Court, and that the jury be instructed that neither the State nor the defense is bound by his testimony; but it is offered for what its worth, for such interpretation as they see fit to give it, and for their enlightenment; and subject to the examination of both the State and defense to the court—based on the authority of Brown v. State, quoted in 108 So. R. at 843. In other words, call him as a court's witness, subject to examination of the Court, State or defense." Counsel for defendants then moved for a mistrial: "If the Court please, after the statement of the State Attorney just made, I would like the Court to declare a mistrial in the case. That is a statement of facts that is tending, and perhaps does, prejudice the rights of the defendants in the eyes of the jury, by laying the predicate that the witness would falsify his testimony. I think it is a well-settled principle of law that the jurors are the sole judges of the credibility of the witnesses, and they are to take into consideration the demeanor of the witness in testifying, and they can believe or disbelieve any parts of the testimony that are conflicting. From the statement of Mr. Hawthorne, I think that it has prejudiced these defendants in the eyes of the jury, and I ask that a mistrial be declared."

In the first place, assuming that the remarks were entirely improper, the motion for a mistrial was not the proper remedy. The usual procedure would have been to request the court to instruct the jury to disregard objectionable remarks of the State Attorney.

To have granted the motion of counsel to declare a mistrial would have been out of keeping with the usual procedure. The procedure on a similar issue in the case of Brown v. State, 91 Fla. 682, 108 So. R. 842, indicates clearly that the ruling here did not constitute an error.

In the present case, the apprehension of the State Attorney that the testimony of McKenney might be adverse and contradictory to his former sworn extra-judicial statement taken down by the assistant court reporter at the request of the criminal investigator, was fully borne out. His testimony given upon being called by the court of its own motion, contradicted material statements given in the former sworn statement.

In the case of Brown v. State, *supra*, this Court, following the early case of Selph v. State, 22 Fla. 537, said:

"The presiding judge has a right in the exercise of a sound discretion to call a witness either for or against the prisoner, and when so called and questioned by the court to permit both sides to cross-examine him."

The last assignment presented is based upon admission of the signed and sworn statement of the witness William McKenney jointly indicted and who had been previously upon a severance convicted upon the same charge. The witness McKenney made several statements at the present trial on material issues in the case contradictory to those made in his extra-judicial statement; the latter was therefore admissible to impeach his testimony given in the present trial and it was not inadmissible by reason of the fact that McKenney was introduced as a witness by the trial court. He was neither a witness for the State, nor was he called for the defendant, but his testimony was placed before the jury for its consideration in making up its verdict. Under these circumstances, either party under

the law has a right to impeach him if his testimony was detrimental and the court did not therefore err in calling the witness nor in permitting the State Attorney to impeach the witness by introducing his sworn extra-judicial statement for that purpose. Brown v. State, *supra*; 16 C. J. 846-847; People v. Rardin, 255 Ill. 9, 99 N. E. R. 59, Ann. Cas. 1913 D, 282.

No reversible error being made to appear the judgment and sentence of the trial court should be affirmed.

PER CURIAM.—The record in this cause having been considered by the Court, and the foregoing opinion prepared under Chapter 14553, Acts of 1929, adopted by the Court as its opinion, it is considered, ordered and adjudged by the Court that the judgment of the Court below should be, and the same is hereby, affirmed.

TERRELL, C. J., and WHITFIELD, ELLIS, STRUM, BROWN and BUFORD, J. J., concur.