44 So.2d 644 (1950)
TILLMAN
v.
STATE.
Supreme Court of Florida, en Banc.
February 7, 1950.
Rehearing Denied March 6, 1950.
*645 Edgar W. Waybright, Sr., Roger J. Waybright, P. Guy Crews, Jacksonville, and Reuben A. Garland, Atlanta, Ga., for appellant.
Richard W. Ervin, Attorney General, and Reeves Bowen, Assistant Attorney General, for appellee.
CHAPMAN, Justice.
The appellant-defendant, Henry V. (Skimp) Tillman, was indicted in the Circuit Court of Duval County, Florida, for the murder of Frank E. Wood. Shortly thereafter he was placed upon trial in the same court and a jury, after hearing all the testimony, returned a verdict of murder in the first degree, without recommendation as to mercy. The trial court denied defendant's motion for a new trial and the death sentence was imposed. The defendant appealed. It appears that Frank E. Wood was shot at the corner of State and Main Streets in the City of Jacksonville about 2:30 p.m., August 12, 1948, and languished until November 28, 1948, and died. Wood lived three months and sixteen days after the appellant-defendant shot him.
The record discloses that the appellant operated a bar on August 12, 1948, situated at the northwest corner of Main and State Streets in Jacksonville, Florida, and the deceased and his brother, Edmund Wood, went to the saloon for a drink of beer and when there were served by the appellant. A conversation ensued between the two Wood boys and the appellant about some criminal cases of county-wide interest previously tried in Duval County, to wit: the Hyslers, Melvin or Smitty cases. It appears that a fight occurred between Frank E. Wood, the deceased, and the appellant-defendant, during which the appellant shot Wood in the shoulder and the pistol ball ranged backward severing his spinal cord. The shot rendered Wood immediately helpless and he fell to the floor, as his body below the place of severance of the spinal cord was paralyzed.
We find conflicts and disputes in the testimony on the question as to who started the fight or who was the aggressor. The appellant's testimony disclosed that he was in the act of leaving the bar to enter his automobile  then parked at the side door of his bar  and as he came from behind the counter of the bar, the deceased struck him and acted as though he would draw a pistol, when the appellant fired the fatal shot. It was his contention that he shot Wood in order to protect his own life and during the progress of the trial adduced evidence to sustain this theory, and the issue so made was submitted to the jury by the trial court, under appropriate instructions.
It was the State's theory, supported by considerable evidence in the record, that the defendant became enraged about a remark of the deceased about the criminal cases and then took his pistol and went from behind the counter to the place the deceased was sitting in the open space of the bar and struck him with his hand  the deceased struck back  and the defendant then shot him. The State contended that the defendant was not on his way to his automobile to go home when he came from behind the counter of his bar, but the only purpose was an attack on the deceased. The jury heard the disputes and conflicts in *646 the testimony given by the State's and defendant's witnesses and had the exclusive right, under our judicial system, to decide which group of these witnesses it would believe and which group it would not believe. The jury's verdict settled the controversy. The errors relied upon for reversal are: (1) the trial court was disqualified; (2) the dying declaration of the deceased was erroneously admitted into evidence; (3) the testimony of the court's witnesses was prejudicial; (4) the charges of the trial court and inflammatory argument of the State Attorney deprived appellant of an impartial trial; (5) the evidence adduced was insufficient to support the verdict; (6) alleged statements in the dying declaration were prejudicial.
Pursuant to the provisions of Section 38.02, F.S.A., on the 12th day of January, 1949, within the thirty day period, the defendant through counsel filed a suggestion of disqualification of the Trial Judge as Judge in said cause, to wit: Honorable Bryan Simpson. The petition recited: (1) the filing of the indictment on December 17, 1948; (2) Attorney John A. Rush on December 23, 1948, filed suit against the appellant in behalf of Martha Wood, widow of Frank E. Wood, claiming damages in the sum of $100,000. John A. Rush was a witness to the dying declaration made by the deceased and would give testimony in behalf of the prosecution at the trial and against the defendant-appellant. Attorney John A. Rush married the sister of the trial Judge, Honorable Bryan Simpson; (3) that the trial Judge, being related within the third degree to attorney John A. Rush and the latter being a witness against the defendant, the trial Judge, because of this factual situation, became interested in the prosecution of the cause in the lower court and came within the inhibitions of Section 38.02, F.S.A.; (4) that John A. Rush, the best of defendant's knowledge and belief, was to be paid in the civil case upon a contingent basis; (5) other pertinent facts are set forth in the petition of disqualification of the trial Judge but the points raised may be ruled upon here on the facts above stated. Counsel for appellant cite our holding in Villaneuva v. State, 127 Fla. 724, 173 So. 906, and State ex rel. Caro, County Solicitor, v. Reese, Judge, 142 Fla. 734, 195 So. 918, and many other authorities.
The record reflects that the trial Judge on February 8, 1949, filed in the cause a statement prescribed by Section 38.04, F.S.A., and held that he was not disqualified to hear the cause and that attorney John A. Rush was not interested in the prosecution of the appellant under the indictment lodged against him. Exhibit A attached to the trial court's statement as provided for by Section 38.04, supra, is a record of the proceedings of the hearing on the disqualification petition had in the court below under date of January 13, 1949. Paragraph 11 of the petition of disqualification is viz.: "That John A. Rush to the best of defendant's knowledge and belief, is to be paid in the civil cause on a contingent basis". The burden of proof of the quoted allegation rested, as a matter of law, on the petitioner. The petitioner and counsel failed to prove the allegation, as shown by the record: (Page 41).
"The Court: Now, the eleventh numbered paragraph of the suggestion, the truth of that, of course, is not apparent, as to the basis of Mr. Rush's employment; the basis of his employment is not apparent from anything here.
"Mr. Waybright: No, sir.
"The Court: I don't know whether you care to offer anything about that or not. I have no way of determining that.
"Mr. Waybright: I don't think it would be material, but the basis of that is, of course, only  so far as we know, we have no knowledge of the contract between Mr. Rush and these parties, except the general nature of contracts of that sort between clients and attorneys  they are usually on a contingent basis and from the amount of the suit and so on. I think it would necessarily have to be, but it is information and belief only. That's correct, isn't it?
"Mr. Crews: Yes.
"The Court: Now, is there any testimony that you want to offer as to the truth of anything else in there?"
*647 The record reflects that after a hearing on the petition of disqualification in which counsel for appellant were present and given an opportunity to prove the pertinent allegations thereof, the trial judge, on January 13, 1949, entered an order to the effect that he was not disqualified to sit in the cause  a recital in the order is viz.: "and the undersigned Judge having examined the same, and satisfied himself of the truth of the material and relevant matters of fact alleged therein which do not appear of record in this cause;" and concluded that attorney John A. Rush was not interested in the criminal prosecution. It is quite true, and the writer frankly concedes, that members of the bar frequently are employed upon a contingent basis to represent clients in negligence suits, but in the case at bar counsel for appellant alleged but failed to prove that attorney John A. Rush was employed on a contingent basis by the widow, Martha Wood, to represent her in the civil cause brought against Henry V. Tillman. If the evidence adduced on the point before us during the progress of the criminal prosecution as reflected by the record may by us be considered, then the conclusion is inescapable that the contention is without merit.
It is next contended that the judgment below should be reversed because the trial court failed and omitted to file a sworn statement as to his qualification to sit in the cause until February 8, 1949, some time after the rendition of the verdict which is dated January 22, 1949. Section 38.04, F.S.A., provides: "Whenever any judge shall enter an order under § 38.02 declaring himself qualified to act in said cause, he shall contemporaneously therewith file therein a sworn statement that to the best of his knowledge and belief the ground or grounds of the disqualification named in the suggestion do not exist." Arguendo, let us concede that the trial court, in light of the existing conditions and circumstances, failed and omitted to "contemporaneously" file the sworn statement with the order of qualification dated January 13, 1949, and was tardy in so doing from January 13th until February 8, 1949, can it be truthfully said that the appellant's rights have been prejudiced by the delay? The delay, doubtlessly, was due to the time consumed in the trial of the criminal case but no effort or request appears of record as made by the appellant or his counsel for a filing earlier than February 8, 1949. It was not brought to the attention of the trial court, as we study the record, what right, if any, the appellant suffered or was denied by a tardy filing of the sworn statement by the trial court. See Section 54.23, F.S.A.
Frank E. Wood was immediately rushed to a hospital from the appellant's bar where he was shot. He expressed a doubt about his recovery and around 6:00 o'clock on August 12, 1948, the attending physician advised Wood that he could not get well. Around 8:00 o'clock, or shortly thereafter, the State Attorney went to the hospital to obtain the wounded man's statement about the difficulty. The record discloses that the deceased believed death was imminent and inevitable and he was without hope of recovery. The record on this point is viz.:
"Q. Now Frank, as you know, I am Bill Hallowes, the State Attorney. How do you feel, Frank? A. I don't know. He told me he didn't think I would make it until morning.
"Q. The doctor told you you wouldn't make it until morning? A. He didn't think I would.
"Q. Do you think you are going to make it? A. I don't see how.
"Q. Are you in a lot of pain? A. Oh, God."

* * * * * *
"And then I thought that was the end of it, but about that time this Bill  I have got to move some way or other  Jesus Christ."

* * * * * *
"Q. Now, Frank, of course you realize that your condition now is critical, do you not? A. I ought to, I sure do. Bill?
"Q. Yes, Frank. Do you think you can get well, Frank? A. I don't believe so. My spinal cord is gone.
"Q. You know you are paralyzed? A. Forever.
*648 "Q. And you then don't hold out any hope of recovery? A. Well, Bill, a miracle maybe, but he told me not, and I don't see how.
"Q. Did the doctor tell you you couldn't make it? A. Awful, awful bad, it went into my  he can tell you about it.
"Q. Well, you realize your condition now, Frank, and you are prepared now to meet your God, aren't you? A. Yes."
We have held in order to render a dying declaration admissible, the court must be satisfied that the declarant, at the time of his utterance, believed that death was imminent and inevitable and that declarant entertained no hope of recovery. The absence of all hope of recovery and the appreciation by the declarant of his speedy and inevitable death, is a preliminary foundation that must always be laid to make the declaration admissible. It is a mixed question of law and fact for the court to decide before permitting its introduction into evidence. Lester v. State, 37 Fla. 382, 20 So. 232; Sealey v. State, 89 Fla. 439, 105 So. 137, and similar cases. The dying declaration was properly admitted into evidence.
Appellant's third question is viz.: Did the trial court err in calling William T. Brush as a witness for the court and in permitting the State to impeach the witness? The witness Brush was an eye witness to the shooting as he worked in the bar of the appellant and was under subpoena as a State witness at the trial. The State Attorney moved the court to call Brush to the witness stand as the court's witness. It is admitted that Brush was an eye witness to the shooting. The record reflects the following:
"Mr. Hallowes: * * * it is my opinion, as state attorney, made in good faith, that William T. Brush may testify falsely to certain material facts and may attempt to conceal certain material facts bearing upon the question of the guilt of the defendant upon this charge, to the detriment of the state.
"Since the commission of the offense charged in the indictment in this case, the said William T. Brush has made contradictory and inconsistent statements, under oath and otherwise, to me and in my presence. If called as a witness by the state of Florida, the said William T. Brush may prove to be a hostile witness to the interest of the State of Florida. I, as state attorney, do not wish to assume the responsibility of jeopardizing the state's case by calling William T. Brush as a witness for the state, thereby vouching for the truthfulness of his testimony, when to my own personal knowledge he has made inconsistent and contradictory statements relative to the facts of this case. I do not feel that the State of Florida should be, necessarily, bound by his testimony.
"Therefore, and for the reasons so stated, I now ask that William T. Brush be called as a witness by the court, to be questioned by the court and examined and cross examined by the prosecution and the defense, but not as a witness for either the state or the defendant, all in accordance with the law of this state as announced by our Supreme Court in the case of Brown v. State, 91 Fla. 682, 108 So. 842; Morris v. State, 100 Florida 850, 130 So. 582; and Daugherty v. State, 154 Florida 308, 17 So.2d 290.
"Mr. Waybright: We have nothing to say with reference to the motion.
"The Court: The motion, then, is granted. The witness  what is his name?
"Mr. Hallowes: William T. Brush.
"The Court:  William T. Brush, then, will be called as a court witness, under the rule announced in the Brown case and followed in the later cases."
We fail to find merit in question number three supra.
Appellant's question number four is viz.: Where the charge of the court, the trial judge's comment on the evidence and inflammatory arguments of the State Attorney were such as the defendant did not receive a fair and impartial trial and it was not due to his fault, should he receive a new trial? Various questions are argued under the above question viz.: (1) the court's charge; (2) the trial Judge's comments on the evidence; (3) arguments of the State Attorney; (4) the admissibility *649 of evidence; (5) the impeachment of the witness Brush; (6) the denial of the defendant's motion for a directed verdict of not guilty as to murder in the first degree; (7) a picture of the appellant taken shortly after the shooting which showed that appellant did not have a bruise on his face; (8) refusal of the trial court to receive evidence as to the health and physical condition of the appellant; (9) appellant's brief singles out 26 different statements made by the State Attorney to the jury and asserts that each was dehors the record, improper and highly inflammatory and prejudicial to the appellant's rights and for these reasons the appellant did not receive a fair and impartial trial and this court should reverse the judgment entered below so that a fair and impartial trial could be had at a second trial.
Counsel for appellant cite many authorities in support of question four supra. The entire record has been studied and carefully examined in light of the contentions here made. It is possible that some of the arguments made by the State Attorney to the jury  when considered in light of the entire record  may appear not to be proper conclusions or inferences drawn from the evidence, but the record discloses that appellant's counsel failed to object to the many arguments and obtain a ruling of the trial court thereon. The only exception to the above statement is found on pages 683-4 of the transcript. It is likely that the trial court would have restrained the State Attorney during the course of his argument had counsel for appellant made seasonable objections to the many arguments assigned as error on this record. It is our conclusion that reversible error has not been shown. See Mendez v. State, Fla., 39 So.2d 468.
Question five of appellant is viz.: Where the evidence fails to prove beyond and to the exclusion of every reasonable doubt that an unlawful homicide was committed, and especially where there is no substantial evidence to show a premeditated design to effect the death of the person killed, should a new trial be granted? On the question of the sufficiency of the testimony it is our view that the disputes and conflicts in the evidence were for the jury, under appropriate instructions by the trial court. The verdict of the jury reflects the conclusion that it did not believe appellant's and his witnesses' version of what occurred at the bar when Wood was shot, but elected to believe the State's witnesses' version of the difficulty. This court does not substitute its views and conclusions on questions of fact for that of the jury. On the question of premeditation, the appellant referred to the Wood boys as "sons of bitches" and he, Tillman, would "teach them" to come there for information. Tillman was angry before leaving his place behind the counter. He armed himself with a pistol and walked 58 feet and struck the deceased  the deceased struck back  and appellant shot him, according to the State's testimony. The question is without merit.
Appellant's sixth question is viz.: Where the court admitted into evidence many statements in the alleged dying declaration which could not have been properly received if the deceased has been a witness on the stand, was it reversible error? It is contended that statements of the deceased made at the hospital when the dying declaration was made, in part viz.: "Are you in a lot of pain?", "Oh, God", "I am sorry, give me a little time", and "I have just got to move some way or other, Jesus Christ", were prejudicial. The answer to the several contentions is found in our ruling in Sealey v. State, 89 Fla. 439, 105 So. 137, and similar cases.
Affirmed.
ADAMS, C.J., and TERRELL and ROBERTS, JJ., and REGISTER, Associate Justice, concur.
THOMAS and HOBSON, JJ., dissent.
THOMAS, Justice (dissenting).
I dissent because I think the dying declaration was inadmissible and its admission constituted prejudicial error.
HOBSON, J., concurs.