97 So.2d 40 (1957)
Olga CULLARO, Appellant,
v.
STATE of Florida, Appellee.
No. 7.
District Court of Appeal of Florida. Second District.
September 18, 1957.
*41 Carl G. Swanson, Jacksonville, for appellant.
Richard W. Ervin, Atty. Gen., and George R. Georgieff, Asst. Atty. Gen., for appellee.
KANNER, Chief Judge.
This is an appeal from the judgment of the Criminal Court of Record, Hillsborough County, wherein appellant was found guilty of murder in the second degree for the fatal shooting of her husband.
*42 Appellant bases her appeal upon five points which probe the questions for reversible error on the part of the lower court with reference to the admissibility of her confession, and of a photograph of the deceased, and of denial by the court of requested instructions relating to the defenses of self-defense and accident.
The first point questions the propriety of the court's ruling admitting into evidence confession of the appellant, contending that it was made at a time when she was "hysterical" and "not normal". Testimony reveals that there was some crying, wringing of hands, nervousness, and excitement exhibited by appellant at the hospital when the decedent died, but that about an hour to an hour and fifteen minutes later when she made her confession, she exhibited only a slight display of nervousness such as she later evidenced in the courtroom during the course of the trial, as demonstrated by the following questions and answers, Tr. 33:
"By the Court:
"Q. Was she acting like she is now? A. Something similar, yes, sir.
"By Mr. Fisher:
"Q. Would you say that Mrs. Cullaro was merely normal at the time you questioned her? A. Other than being slightly nervous, she was. She wasn't  I couldn't say that she was any more nervous than she is at the present time."
Proof does not evidence such a condition of hysteria as to show that appellant was in such a state of mind as to be bereft of her powers of comprehension at the time she made her confession, but rather the condition described obviously stemmed from the natural emotional reaction which came with distressful realization of the irrevocable result of her deed. The evidence as to the confession was offered through police officers and established that appellant was possessed of her faculties so that she understood the nature and effect of her statements.
A confession should not be rejected because it was made under excitement or mental distress or disturbance not induced by extraneous pressure exerted to compel a confession, but which arose from the confessor's own apprehensions due to the situation in which he found himself. See 20 Am.Jur., section 523, p. 448. It is stated in the same section, "The rule generally prevailing is that the admissibility or voluntary character of a confession is not affected by the fact that the accused was not in full possession of his faculties at the time his confession was made, although such circumstance is to be taken into consideration by the jury in weighing the evidence."
The trial court exercised prudence and caution in determining the admissibility of the confession. He required a preliminary investigation in the absence of the jury; he further required that proper predicate be laid, that the confession was freely and voluntarily made, uninfluenced by any threat, promise, fear, hope, or other illegal inducements. See Nickels v. State, 90 Fla. 659, 106 So. 479; and Morris v. State, 100 Fla. 850, 130 So. 582.
The next two questions posed by appellant as bases for this appeal inquire (2) whether it was proper for the court to have admitted into evidence a gory photograph of the deceased taken in the morgue after the body had been altered and proved no fact not already proved, and (3) whether it was proper for the court to have admitted into evidence a bloody and gory photograph so ghastly as to prejudice and bias anyone looking at it.
As to question number two, the photograph was taken, on the contrary, not at the morgue but by a police officer at the hospital where decedent died; the body itself was not altered, but before death *43 decedent was removed to the hospital by the appellant, where efforts could be made to save his life. Under such situation, it could not be expected that photograph of the decedent be taken before his death at the scene where the shooting occurred. As to question number three, the photograph could not be termed "gory". It does not depict any pools of blood; there is no display of murderous weapons, no grotesque positions, no mutilations of the body except the single bullet wound. The photograph shows decedent lying on a hospital operating table with the point of entry of the bullet into his body being visible. The photograph was introduced to show the jury the point where the bullet penetrated deceased's body and also to demonstrate that the shot was fired from such a distance as to refute claim of powder burns such as might have appeared if the shooting had occurred in the close confines of a struggle as claimed by the appellant. The bases for error sought under the second and third questions are not tenable. A photograph shown to be a correct representation of a physical object as to which testimony is adduced, may be admitted in evidence for the use of witnesses in explaining their testimony and to enable the jury to understand the case more perfectly. See Ortiz v. State, 30 Fla. 256, 11 So. 611; and Sanford v. State, 90 Fla. 337, 106 So. 406. The trial court, nonetheless, acted within bounds consistent with the principle with reference to admissibility of photographs of a dead body and of photographs portraying a gruesome scene as laid down in the cases of Mardorff v. State, 143 Fla. 64, 196 So. 625; and Thomas v. State, Fla., 59 So.2d 517. Moreover, any error in admission of deceased's photograph in that the photograph may have been so gruesome or hideous as to arouse passion of jury was harmless where there was ample evidence aside from the photograph to support defendant's conviction for second-degree murder. See Webb v. State, Fla., 62 So.2d 410. The evidence is ample to support the verdict.
Appellant's question four relating to the denial by the trial court of the requested charge of self-defense was answered in appellant's own testimony, Tr. p. 137:
"Q. There is no self-defense in it at all? A. No, sir, there is no self-defense at all."
Question five inquires whether the court erred in denying the requested charge of accidental homicide. Her requested instruction was adequately covered and the jury fairly informed by the instruction on accident given by the trial court.
The judgment of the court below is affirmed.
PLEUS and ALLEN, JJ., concur.