374 So.2d 630 (1979)
Gennie GRANT, Appellant,
v.
The STATE of Florida, Appellee.
No. 77-1407.
District Court of Appeal of Florida, Third District.
August 21, 1979.
Bennett H. Brumer, Public Defender and Howard Blumberg, Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen. and Steven R. Jacob, Asst. Atty. Gen., for appellee.
*631 Before HAVERFIELD, C.J., and KEHOE and SCHWARTZ, JJ.
SCHWARTZ, Judge.
Grant appeals from his conviction, after a jury trial, on four separate counts of possession of a firearm by a convicted felon. We affirm as to three of the counts and reverse as to the other.
On February 11, 1977, the defendant became involved in an altercation with his 19-year old son Earl in the living room of their apartment in the City of Miami. As a result, the son, who was allegedly holding a .32 pistol at the time, was killed by a blast from a shotgun fired by Grant. After the defendant, who had been previously convicted of a felony, called the police to the scene, they entered the apartment. Acting of course without a warrant, they discovered the shotgun and the .32 in plain sight in the living room near the body of the decedent. In an adjacent bedroom, two .22 rifles were found under a bed and two .22 pistols were located in a closed dresser drawer. Along with several other alleged offenses, all of which were disposed of prior to their submission to the jury, Grant was charged with the second degree murder of his son. The jury acquitted him of that charge. He was found guilty, however, on four counts of possession of a firearm by a felon. Count V of the information alleged the possession of "A SHOTGUN;" Count VI, of "A RIFLE;" and Counts VII and VIII, of "A PISTOL" with no further description of the particular firearm in question. The trial judge sentenced Grant to consecutive county jail sentences as to Counts V and VI, and concurrent five year periods of probation on Counts VII and VIII.
The appellant's primary point on appeal concerns the trial judge's denial of his pre-trial motion to suppress all six guns seized from the apartment. The motion was based upon the claim that the warrantless search was constitutionally unjustified. The lower court denied the motion in its entirety on the ground that since the apartment was a "murder scene," the search was wholly permissible. In so holding, the trial judge was only partly correct. Issues of the propriety of the search of a "murder scene" and the extent to which such a search may be upheld are controlled by the Supreme Court's recent decision in Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). The Mincey decision rejected the notion of a blanket so-called "murder scene exception" to the warrant requirements of the Fourth Amendment, which was the basis of the ruling below. Instead, the court held that the well-accepted "exigency" doctrine, along with its limitations, were applicable to such a situation. At 437 U.S. 392-393, 98 S.Ct. 2413-2414, 57 L.Ed.2d 299-300, the court held:
The State's second argument in support of Arizona's categorical exception to the warrant requirement is that a possible homicide presents an emergency situation demanding immediate action. We do not question the right of the police to respond to emergency situations. Numerous state and federal cases have recognized that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid. Similarly, when the police come upon the scene of a homicide they may make a prompt warrantless search of the area to see if there are other victims or if a killer is still on the premises. Cf. Michigan v. Tyler, supra, 436 U.S. 499, at 510, 98 S.Ct. [1942], at 1950-1951 [56 L.Ed.2d 486.] `The need to protect or preserve life or avoid serious injury is justification for what would otherwise be illegal absent an exigency or emergency.' Wayne v. United States, 115 U.S.App.D.C. 234, 241, 318 F.2d 205, 212 (opinion of Burger, J.). And the police may seize any evidence that is in plain view during the course of their legitimate emergency activities. Michigan v. Tyler, supra, 436 U.S., at 510, 98 S.Ct., at 1950-1951; Coolidge v. New Hampshire, 403 U.S. 443, at 465-466, 91 S.Ct. [2022], at 2037-2038 [29 L.Ed.2d 564].
But a warrantless search must be `strictly circumscribed by the exigencies *632 which justify its initiation,' Terry v. Ohio, 392 U.S. 1, at 25-26, 88 S.Ct. [1868], at 1882 [20 L.Ed.2d 889] [44 Ohio Ops.2d 383] and it simply cannot be contended that this search was justified by any emergency threatening life or limb... . And a four-day search that included opening dresser drawers and ripping up carpets can hardly be rationalized in terms of the legitimate concerns that justify an emergency search.
Applying these tests, which are in full accordance with the earlier Florida decisions on the subject, Long v. State, 310 So.2d 35 (Fla.2d DCA 1975) and Webster v. State, 201 So.2d 789 (Fla.4th DCA 1967), it is clear that the motion to suppress was properly denied as to the shotgun and the .32 pistol, which were in the officers' "plain view" as they entered the room in which the body was found. We reach the same conclusion concerning the two .22 rifles found under the bed. Looking under the bed in a room a few feet away from the scene of a homicide is surely a proper part of the "prompt ... search of the area to see if there are other victims or if a killer is still on the premises ..." deemed permissible by the court in Mincey, supra.[1] The two .22 caliber pistols found in the drawer, however, should have been suppressed. As Mincey specifically states, 437 U.S. at 98 S.Ct. at 2414, 57 L.Ed.2d at 300, "a ... search that included opening dresser drawers ... can hardly be rationalized in terms of the legitimate concerns that justify an emergency search."[2]
Since the shotgun was the subject of Count V, and one of the two rifles from under the bed was clearly involved in Count VI, Grant's motion to suppress contentions as to those counts are clearly without merit. The application of our holdings to Counts VII and VIII, however, presents a far more difficult and perhaps unique appellate problem. The issue arises because it is simply impossible to tell from the record whether, as to one of these counts, the defendant was charged with and convicted of possession of the .32 pistol found in the living room, which was properly not suppressed, or with one of the .22 pistols in the drawer, which should have been. As we have seen, although three pistols were seized from Grant's apartment, he was accused of the possession of only two.[3] One of these must logically have been one of the .22's in the drawer; therefore, Grant is plainly entitled to discharge on either Count VII or VIII. Neither in the information nor at any other place in the extensive transcript, however, is there any description of the other "PISTOL" the possession of which was charged in each of those counts.[4] Since there was evidence to support a jury finding that Grant owned or possessed all three of the pistols, the ultimate issue therefore is which side should take the consequences of our total inability to determine whether as to one of the two counts in question, he was or was not convicted of possessing a firearm which was not properly admitted into evidence. To pose the question in this manner is to answer it. Perhaps the most famous and most widely applied of all the appellate maxims so familiar to all of us in the trade are that judgments are presumed correct and that it is the obligation of the appellant *633 clearly to demonstrate the existence of harmful error. 3 Fla.Jur.2d, Appellate Review, §§ 313, 316 (1978). Manifestly, Grant has not carried that burden in this case.[5] See Ray v. State, 374 So.2d 1002 (Fla.2d DCA 1979) and cases cited. Because he has not demonstrated that he was not convicted, as charged in Count VII,[6] of the possession of the properly seized .32, there is no basis for reversal of his conviction of that charge.[7] Since, however, there is no doubt that he was convicted of possession of one of the pistols in the drawer, his conviction as to the remaining count must be reversed.
Our consideration of the remaining points presented for reversal demonstrates both that they were not appropriately preserved below and that they are without substantive merit. Daly v. State, 67 Fla. 1, 64 So. 358 (1914); Morris v. State, 100 Fla. 850, 130 So. 582 (1930); County of Dade v. Pedigo, 181 So.2d 720 (Fla.3d DCA 1966), cert. denied, 188 So.2d 817 (Fla. 1966); Frank v. State, 199 So.2d 117 (Fla.1st DCA 1967).
As to Counts V, VI, and VII, the judgment under review is affirmed; as to Count VIII, it is reversed and the cause remanded with directions to discharge the defendant as to that count.
Affirmed in part, reversed in part and remanded.
NOTES
[1] We disagree with the appellant's contention that the rifles were discovered only by an identification technician who entered the bedroom after the scene had been secured and thus after the exigency had terminated. The record shows that the technician was directed to the area by homicide officers who had found the rifles during the course of their initial, permissible, search.
[2] There is no suggestion that any other exception to the warrant requirement would apply to the search of the drawer. See Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).
[3] There was evidence, through his own statements, that all six of the firearms taken from his apartment belonged to Grant. The investigating officers testified, however, that they charged him with possession of only four because, at one stage of the interrogation, he claimed that two were owned by other persons. The trouble is that neither the officers nor anyone else ever stated which two those were. The fact that two rifles were seized and only one was charged, accounts for one of the two, but there is no accounting for the other.
[4] Ibid.
[5] It should be noted that Grant's counsel did not move for a bill of particulars as to Counts VII and VIII, or object, on the basis we have discussed to the admission of any of the pistols seized from the apartment. (In fact, all six firearms, including both rifles, one of which was clearly not involved in the information and which was not otherwise relevant, were admitted into evidence without pertinent objection.) Either action would have demonstrated exactly which pistols were referred to in the information and thus the existence, if any, of harmful error.
[6] The defendant was sentenced to identical concurrent sentences of probation on Counts VII and VIII. It therefore makes no difference which count we choose to affirm and which to reverse.
[7] It is unnecessary to elaborate upon the lesson about "making a record" to be learned from the circumstances of this case.