J. C. LOWE v. STATE.

178 So. 872.

En Banc.

Opinion Filed December 20, 1937.

*A. Yancy Teachy,* for Plaintiff in Error;

*Cary D. Landis,* Attorney General, *Roy Campbell* and *Tyrus A. Norwood,* Assistant Attorneys General, and *L. Grady Burton,* State Attorney, for the State.

ELLIS, C. J.—The plaintiff in error, J. C. Lowe, was indicted by the grand jury of Hardee County on July 25, 1936, for the alleged murder of E. D. Adkinson on July 4, 1936, by shooting the said Adkinson with a pistol.

On the 24th of August following, Lowe was arraigned and pleaded not guilty, and a week later he was placed upon trial for the alleged offense; and was found guilty of murder in the first degree.

A motion for new trial was submitted and on the same day the court allowed additional time for the submission to the court of an amended motion for a new trial which was submitted on the 7th day of October following. During the fall term of the court, on December 14, 1936, the court overruled both the original and amended motions and ninety days time was allowed the defendant below in which to make up and tender a bill of exceptions.

Judgment of the court was entered on December 14, 1936, and a few days later a writ of error from this Court was taken to review the judgment. The assignments of errors contain many grounds, relating principally to the sufficiency of the evidence to sustain a conviction; the alleged errors of the court in its general charge to the jury; alleged errors in the admission of certain evidence and the examination of certain witnesses in allowing a kinsman of the accused to serve as a juror, and alleged improper remarks of the prosecuting attorney in the conduct of the cause.

The briefs submitted by attorneys for the plaintiff in error, however, abandoned many of these assignments and

confined the consideration of the case to the following ques-
tions: the sufficiency of the evidence to sustain the verdict;
the calling by the court of witnesses to testify and the failure
of the court to charge the jury on the subject of the identity
of the person alleged to have been killed in view of the de-
fense which was interposed that the *corpus delicti* was nec-
essary to be established.

The names of Theda Coker and Gladys Waldron, which
appear upon the back of the indictment, were filed as State
witnesses, but during the progress of the trial the State's
attorney announced to the court that he desired to have those
witnesses called as court witnesses as the State "does not
feel justified" in "vouching for" the testimony of those
witnesses. The court thereupon called such witnesses and
stated in each case before the witness appeared on the stand
that she was called as a court witness as her testimony was
not vouched for by either the State or the defendant. To
this proceeding there seems to have been no objection in-
terposed.

In the case of Brown v. State, 91 Fla. 682, 108 South.
Rep. 842, the Court adopted the rule announced in 16 Corpus
Juris 846, and stated it to be as follows:

"It is in the discretion of the court to call any witness
who was present at the transaction, or whose name is on the
indictment, not called by the prosecution, and, when so called,
the witness may be examined and cross-examined by both
sides. *He is not a witness for either party.* (Italics
ours.)"

"The prosecution is not compelled to call and vouch for a
witness, even though it is evident that he knows all about
the facts, where the prosecuting officer, acting in good faith
and under his official oath, is of the opinion that the witness
will, by false swearing or by concealment of material facts,
attempt to establish the innocence of the defendant; but

such witness may be called by the court upon the request of the State's attorney, and may be questioned by the court and examined and cross-examined by the prosecution and the defendant." P. 847.

See also Selph v. State, 22 Fla. 537; Morris v. State, 100 Fla. 850, 130 South. Rep. 582.

It appears from the bill of exceptions in this case that these witnesses, who were called by the court as court witnesses, were not questioned by the court, but the examination of these witnesses was made first by the State's attorney, who examined them, and afterward they were cross-examined by defendant's counsel. That was an irregularity, but which seems to have produced no harm as there were no objections and exceptions by defendant's counsel to the examination of the witnesses by the State's attorney.

As to the testimony of Theda Coker, it seems to have been of a negative quality in which she denied knowledge of many of the facts about which she was questioned and it appears that no basis was attempted to be laid for contradicting her statements.

The testimony of Gladys Waldron consisted largely of a denial of statements concerning certain personal property of the accused and other articles which were in the back of an automobile, which she is supposed to have made before the grand jury, when that body was investigating the alleged crime.

Her examination by the State's attorney proceeded according to the usual method for impeaching her testimony by asking her if she made certain statements before the grand jury when she was examined by that body in relation to the ownership of certain personal property by the accused. Later L. C. Evans, secretary of the grand jury, was called as a witness and examined in relation to those statements, which amounted to a contradiction of the wit-

ness's testimony. During the examination of the witness, Gladys Waldron, at the trial, in answer to certain questions by the State's attorney as to testimony which she had given before the grand jury, she admitted making such statements, but said that she was threatened by officers of the court and intimidated and put in a state of fear that if she did not testify as it was alleged she did that she would be punished by imprisonment.

Evans was called as a witness and testified that as secretary of the grand jury he was present and heard her testimony before that body and that no threat or intimidation of her was made by anyone connected with the grand jury and that her testimony concerning the articles contained in the car which were alleged to have been the property of the accused were freely made.

The purpose of this examination of Evans was to establish proof of the existence of certain facts which were deemed to be of an incriminating character in the chain of circumstances constituting the evidence upon which the defendant was convicted. A fact may not be established by such methods. The effect of the impeaching evidence is not in the nature of substantive evidence in maintenance of the plaintiff's cause, but can only be regarded as counteracting or annulling the harmful effects of the adverse testimony of witnesses. See Adams v. State, 34 Fla. 185, 15 South. Rep. 905.

An analysis of the testimony of both the women witnesses called by the court and that of the so-called impeaching witnesses, Carlton and Evans, reveals that in the method adopted by the prosecution it was sought to place before the jury testimony which it is said the two court witnesses gave before the grand jury as to certain incriminating facts against the accused. That method cannot be tolerated and this Court in the case of Adams v. State, *supra,* clearly

pointed out the lack of any probative value of such evidence. It may have appeared to the prosecuting officers that the two witnesses, Coker and Waldron, were adverse to the State's case and that their mental attitude was such that no reliance could be placed on their testimony and for that reason it was suggested to the Court that the State could not vouch for the verity of their testimony and requested that they be called by the court as court witnesses, but when that was done it was not permissible by this indirect method to get before the jury as substantive evidence statements that they may have made at another time contradictory of their testimony which they gave as court witnesses. It also appears that in the case of Gladys Waldron, while she admitted making certain statements before the grand jury which were material and damaging to the defendant, she said that she was induced to make those statements through fear, induced by threats of imprisonment if she did not testify as the threats of the prosecutor indicated. As to that statement it was permissible to show that no such threats were made, but it was not permissible to go to the extent of having the impeaching witnesses repeat the testimony that she gave before the grand jury by placing before the jury the facts to which she then testified which were incriminatory of the accused and greatly damaging to his cause.

The rule as announced in Encyclopedia of Evidence is as follows:

"Where a witness' variant statements are put in evidence to impeach him, they cannot be used by the jury as tending to establish the facts stated in them, but are competent only as impairing the witness' credibility and thereby annulling his testimony, unless such statements were also originally admissible as substantive evidence." See 7 Ency. of Ev. p. 249.

The court did not in its charge to the jury direct the latter's attention to that particular phase of the effect of impeaching testimony and in the absence of such charge the jury may have regarded the testimony of both Carlton and Evans, called as impeaching witnesses, as substantive evidence tending to establish the damaging facts incriminatory of the accused.

Upon an examination of the record, therefore, we are unable to say that no substantial error was committed by the court when it is considered that the evidence against the defendant consisted entirely of circumstantial evidence where each link of incriminating facts constituted a substantial part of the chain of circumstances which were woven about the accused to establish his guilt.

When circumstantial evidence is relied upon in a criminal case for the conviction of an accused person, "the circumstances, when taken together, must be of a conclusive nature and tendency, leading on the whole to a reasonable and moral certainty that the accused, and no one else, committed the offense. It is not sufficient that the facts create a strong probability of, and be consistent with guilt; they must be inconsistent with innocence." Parish v. State, 98 Fla. 877, 124 South. Rep. 444; Cannon v. State, 91 Fla. 214, 104 South. Rep. 360; Whetston v. State, 31 Fla. 240, 12 South. Rep. 661.

While it is true that the circumstances which were legally and in accordance with the rules of evidence established in this case may be regarded as sufficient compliance with the rule above announced, yet it is impossible for this Court to state what probative value the jury may have attached to the testimony of Evans as to statements which he said the witness, Gladys Waldron, made before the grand jury, which testimony of Evans should have gone only to the impeachment of the witness, Gladys Waldron, and should not have

been regarded as indeed it might have been, as substantive evidence of the facts contained in the statements made by him as to Gladys Waldron's testimony before the grand jury.

In this view of the case Mr. Justice Brown, Mr. Justice Chapman and the writer agree, but Mr. Justice Whitfield, Mr. Justice Terrell and Mr. Justice Buford do not agree, but think the judgment should be affirmed, while the writer, Mr. Justice Brown and Mr. Justice Chapman think the judgment should be reversed.

When the members of the Supreme Court, sitting six members in a body, after full consultation, it appears that the members of the Court are permanently and equally divided in opinion as to whether the judgment should be affirmed or reversed, and there is no prospect of an immediate change in the personnel of the Court, the judgment should be affirmed. therefore it is considered, ordered and adjudged under the authority of State, ex rel. Hampton, v. McClung, 47 Fla. 224, 37 South. Rep. 51, that the judgment of the Circuit Court in this cause be and the same is hereby affirmed.

Affirmed.

Whitfield, Terrell, Brown, Buford and Chapman, J. J., concur.

Buford, J. (dissenting).—I cannot concur in the opinion prepared by Mr. Chief Justice Ellis because the record shows that there was no objection to the testimony of either the witness, Evans, or the witness, Carlton, which constitutes the ground on which reversal is proposed upon the ground that the facts sought to be established by such testimony could not lawfully be so established, or that such testimony was irrelevant or immaterial.

The only objection to the evidence was upon the ground that the witness was improperly or illegally allowed to refer

to notes made by him when the witness, Glady Waldron, was a witness before the grand jury.

After the witness, Evans, had testified on direct and cross examination, the following occurred:

"MR. TEACHY: Now comes the defendant, by counsel, and moves the court to strike all the evidence, both questions and answers, of the witness, L. C. Evans, for the following reasons, to-wit:

"(1) Because the proceeding of a regularly constituted grand jury is a secret proceeding and not allowed to be exposed under our law.

"(2) Because the memorandum or notes made and shown and exhibited by the witness is the best evidence, and statements made would be at variance with that.

"(3) Because statements made when there was a written record would be secondary evidence.

"(4) Because a grand jury is not a court. And statements made before a grand jury might be false, and it might be a lie, but it isn't perjury because it isn't a court.

"THE COURT (after argument by counsel): Mr. Evans, was there any shorthand reports made of the testimony before the grand jury of the witnesses?·

"WITNESS: No, sir.

"THE COURT: These notes that you have referred to, are they just your individual notes that you made there casually, or were you instructed to make them?

"WITNESS: I had no instructions. My view in taking them, when it came down to the discussion of the case, was to remember them, for or against, whichever way they may be.

"THE COURT: You didn't take a transcript of all the testimony?

"WITNESS: No, sir.

"THE COURT: Motion denied."

The only objection to the Carlton testimony was made at the close of his testimony, as follows:

"MR. TEACHY: The defendant, by counsel, moves to strike all the testimony of the witness, J. C. Carlton, for the same reason as heretofore stated on the witness, Evans."

No request was made that the Court instruct the jury concerning the purpose for which any of the testimony of either Evans or Carlton was admissible.

As far as they went the instructions of the Court to the jury correctly stated the law.

The record establishes the guilt of the accused and every element of the crime of murder in the first degree was established by substantial and sufficient testimony.

The judgment should be affirmed.

WHITFIELD and TERRELL, J. J., concur.