335 So.2d 257 (1976)
Charles McCLOUD, a/k/a Charles N. McCloud, Appellant,
v.
STATE of Florida, Appellee.
No. 48710.
Supreme Court of Florida.
June 30, 1976.
*258 Jack O. Johnson, Public Defender, and Dan P. Brawley, Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen., and Charles Corces, Jr., Richard W. Prospect and Richard L. Wilson, Asst. Attys. Gen., for appellee.
ENGLAND, Justice.
By direct appeal we have before us for review the convictions of Charles McCloud for manslaughter and robbery. Our appellate jurisdiction is properly invoked inasmuch as the trial court directly passed upon and upheld the constitutionality of Section 39.02(5)(c), Florida Statutes (1975),[1] which directs that minors be tried as adults following an indictment for certain major felonies. McCloud was a minor when an indictment was returned against him for first degree murder and for robbery.
The principal facts of this case are relatively simple. The state produced medical and eyewitness testimony which established that an elderly woman died as a result of a fall which occurred during the course of an episode caused by McCloud's attempt to seize her purse in a parking lot in the City of Lake Wales. Among those testifying as an eyewitness was Pernell Robinson, a companion of McCloud at the time of the crime. Upon proper instructions the jury returned guilty verdicts of manslaughter and robbery, and the trial court imposed concurrent sentences of 15 and 30 years imprisonment.
Several errors have been asserted by McCloud concerning his conviction and sentence, principal among which are the validity of Section 39.02(5)(c), the sufficiency of the evidence adduced at trial, the validity of his sentences, and the allegedly prejudicial manner in which Pernell Robinson was questioned by the trial judge. Our review of the record discloses no reversible error, and we affirm the trial court in all respects.
(1) Section 39.02(5)(c), Florida Statutes (1975), provides:
"A child of any age charged with a violation of Florida law punishable by death or by life imprisonment shall be subject to the jurisdiction of the court as set out in § 39.06(7) unless and until an indictment on such charge is returned by the grand jury, in which event and at which time the court shall be divested of jurisdiction under this statute and the charge shall be made and the child shall be handled in every respect as if he were an adult."
McCloud argues that this section is unconstitutional because the happenstance of whether a minor will be tried as an adult depends upon a grand jury indictment for certain major offenses, which in turn is controlled by a prosecutor's unfettered discretion to charge such offenses. We recently rejected this same attack on the statute in Johnson v. State, 314 So.2d 573 (Fla. 1975), and we find no reason to reconsider that decision now. McCloud's suggestion that the statute is in any event unconstitutional as applied to him is unfounded, as our later recitation of the proven facts will show. The trial court properly denied McCloud's motion to dismiss charges against him based on the invalidity of this statute.
(2) The second issue raised by McCloud is that the state did not prove the crime of "robbery", which consists of an unlawful taking by force, fear, assault or violence.[2] In Montsdoca v. State, 84 Fla. 82, 93 So. 157 (1922), the "nice" distinction between robbery and larceny was explained to be the addition to mere taking of a contemporaneous or precedent force, violence, or of an inducement of fear for one's physical safety. Any degree of force suffices to convert larceny into a robbery. *259 Where no force is exerted upon the victim's person, as in the case of a pickpocket, only a larceny is committed. See Colby v. State, 46 Fla. 112, 35 So. 189 (1903). The facts developed at McCloud's trial indicate that he gained possession of his victim's purse not by stealth, but by exerting physical force to extract it from her grasp. McCloud's victim carried her handbag by a strap which she continued to hold after the purse had been seized by McCloud. She released the strap only after she fell to the ground. Furthermore, there was evidence the jury could believe which showed that McCloud attempted to kick his victim while she lay on the ground and after the purse had been secured. Although McCloud would have preferred that the jury disbelieve this testimony, the evidence before the jury was adequate to support a verdict of robbery.
(3) McCloud suggests that the trial court could not properly impose sentences on both guilty verdicts. He argues, essentially, that it is legally inconsistent for the jury to have found him guilty of manslaughter for an unlawful killing which occurred during a robbery, so that the robbery verdict must be vacated. We recently determined that a person can be separately convicted for both felony-murder and the robbery which precipitated the murder, and that dual sentences can be imposed on the convictions. Slater v. State, 316 So.2d 539 (Fla. 1975).
We acknowledge that the verdicts here are inconsistent, but that fact does not lead to a conclusion that the robbery sentence must be vacated. Under Section 782.04(1)(a), Florida Statutes (1975), McCloud was necessarily guilty of felony-murder.[3] As the trial judge suggested, the jury simply may have found the felony-murder rule too harsh in this situation and reduced the penalty to the lesser-included offense of manslaughter. Since the error was in McCloud's favor, he is in no position to complain of the lesser sentence.[4]
(4) The final point on appeal which deserves discussion concerns the testimony of McCloud's friend, Pernell Robinson. Robinson's deposition had been taken well in advance of trial, but as the time of trial approached the prosecutor learned that Robinson was unwilling or unable to recall anything specific regarding the day of the crime.[5] The prosecutor advised the court of this situation and a hearing was conducted outside the presence of the jury to determine whether Robinson would testify to any recollection of the events. Having ascertained that he would not, and at the prosecutor's request, the trial judge called Robinson to the witness stand in front of the jury as the "court's witness".
Robinson's testimony remained vague after initial examination by the prosecutor and by defense counsel. The trial judge had the jury removed and extensively questioned Robinson concerning his loss of memory. No justification was elicited which would account for the change of attitude, except perhaps the passage of time. The court's attempts to refresh Robinson's *260 recollections from his earlier deposition were without success. The court then undertook more vigorous questioning which resulted in a comparatively more specific account. After this questioning the jury was returned and the state conducted further examination. Robinson related the details he had told to the judge. On being examined by defense counsel, Robinson was once more vague.
McCloud urges us to hold that it was improper for the trial judge to question Robinson in the manner he did and to permit Robinson to be called to the stand as a "court witness" for the purpose of allowing the state to ask leading questions.[6] As to the latter, the trial judge had discretion to proceed as he did in the face of the state's proffer and in an effort to exhort truth for McCloud's trial,[7] and his decision did not result in a denial of due process of law.
The more difficult issue concerns the trial judge's questioning of Robinson. McCloud characterizes the circumstances of the interrogation as prejudicial to the defense, asserting that the trial judge used the prestige of his office to require Robinson to give testimony favorable to the state. This, it is urged, usurped the function of the prosecution. In contrast, the state characterizes the trial judge's interrogation as essential to the development of truth, asserting that the trial judge had a responsibility to elicit direct factual evidence which had previously been shown to be within Robinson's knowledge. We reviewed the record to resolve this dilemma, and we conclude that Robinson's deposition must have contained a clear delineation of the events occurring on the day of the crime. He was present as an eyewitness, and he was sufficiently old to be capable of reciting facts relevant to the criminal episode. His deposition statement, which was lucid and responsive, makes that abundantly clear.
When directly questioned on the same subjects during the course of trial, Robinson suffered a near total lapse of memory. Under these circumstances, we believe the law imposes on the trial judge a duty to see that relevant testimony is not suppressed or lost, and that the jury be aided in their search for truth.[8] Instances of prejudicial questioning can occur, of course,[9] but we cannot conclude that one such occurred here. The trial judge here did not abuse his discretion by pressing Robinson, outside the presence of the jury, to recall specific facts germane to the crimes charged.[10]
Finding no reversible error, McCloud's convictions and sentences for robbery and manslaughter are affirmed.
OVERTON, C.J., and ROBERTS, ADKINS, and BOYD, JJ., concur.
SUNDBERG and HATCHETT, JJ., dissent.
NOTES
[1] Fla. Const. art. V, § 3(b)(1).
[2] § 812.13, Fla. Stat. (1975).
[3] It has been argued that there was insufficient evidence that McCloud caused the victim to fall. Our review of the record discloses sufficient evidence to support the jury's finding of causation.
[4] The record reveals that McCloud moved for a new trial at the conclusion of the case, but the grounds alleged do not appear and the hearing on the motion has not been transscribed. Unless McCloud voluntarily waived his right not to be placed in jeopardy a second time, the inconsistent verdicts here would not be grounds for a new trial. McCloud has not expressed before us any desire to waive his constitutional right.
[5] Before the grand jury indicted McCloud, Robinson had given a statement to the police concerning the purse-snatching episode and, as a result of blaming McCloud, was indicted for being an accessory after the fact to first degree murder and robbery. Neither crime would produce a death sentence or life imprisonment. Robinson also was a juvenile at the time of the crime and therefore treated as a juvenile rather than an adult. He was eventually put on probation for his part in this adventure.
[6] Counsel for both sides argue the rules of evidence concerning hostile witnesses and surprise. These matters would be relevant if we were faced with a case of a party impeaching his own witness. See Fla.R.Civ.P. 1.450(a); Foremost Dairies, Inc. v. Cutler, 212 So.2d 37 (Fla.4th DCA 1968). Here, however, the only issue was whether to permit leading questions to be asked of an uncooperative witness.
[7] Anderson v. State, 88 Fla. 93, 101 So. 202 (1924).
[8] Clark v. State, 122 Fla. 310, 165 So. 44 (1935).
[9] See Robinson v. State, 161 So.2d 578 (Fla. 3d DCA 1964); Connley v. United States, 46 F.2d 53 (9th Cir.1931).
[10] We note there is no suggestion that Robinson's deposition was improperly or unfairly taken, or that the facts adduced from him at that time we retained by prejudicial questioning or the like.