453 So.2d 381 (1984)
Fred Lyman BRUMBLEY, Appellant,
v.
STATE of Florida, Appellee.
No. 56006.
Supreme Court of Florida.
June 14, 1984.
Rehearing Denied August 22, 1984.
*382 Carl S. McGinnes, Asst. Public Defender, Second Judicial Circuit, Tallahassee, for appellant.
*383 Jim Smith, Atty. Gen., Richard W. Prospect, Asst. Atty. Gen., Daytona Beach, and Doris E. Jenkins, Asst. Atty. Gen., Tallahassee, for appellee.
BOYD, Justice.
Fred Lyman Brumbley brings this appeal from the judgment of the Circuit Court, Third Judicial Circuit, in Taylor County, adjudicating him guilty of first-degree murder and sentencing him to death. This Court has jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the conviction and remand for reconsideration of sentence.
The murder victim was Robert Clifton Rogers, who left his home in Thomasville, Georgia on the morning of July 20, 1976, and went to work in Tallahassee, Florida. He left his place of employment that afternoon but did not return to his home that day, nor did he ever return home or to his place of employment. In February, 1977, the skeletal remains of the deceased were discovered near a wayside park on U.S. Highway 98 in Taylor County, Florida, several miles west of Perry. The body was identified by testimony matching the dentures recovered at the scene with a chipped piece of denture supplied by the wife of the deceased. A fracture in a bone among the skeletal remains corresponded to a fracture revealed by the medical history of the deceased. A ring found among the skeletal remains was identified at trial by a friend who had given the ring to the deceased.
The state presented the testimony of Russell Lamar Smith. Smith testified that on the afternoon of July 20, 1976, he and appellant were hitchhiking in the Tallahassee area and were offered a ride by Rogers. Rogers was driving a 1969 Chevrolet Caprice, blue with a white top. According to Smith's testimony, appellant got in the front seat and Smith got in the rear. Appellant displayed a pistol to Rogers and from that point on, appellant and Smith told Rogers where they wanted him to go.
Soon after the initial abduction, Smith took over operating the car while Rogers and appellant sat in the rear seat. Smith drove to an area south of Tallahassee where they went down a country lane and got out of the car. At this point Smith left Rogers and appellant, who was still holding the pistol, and took Rogers' car to Woodville to purchase beer and gasoline. Smith then returned for the other two men, and they began driving again. Smith testified that as he drove he was trying to "think things out" pertaining to the situation that he, appellant, and their captive were in.
Eventually Smith drove the car down another dirt road to a clearing where the three men got out of the car to drink beer and "talk things over." Smith and appellant told Rogers to go and sit down a short distance away from them so that they could discuss the problem of what to do with him. Then, with appellant still holding the gun, they robbed Rogers of his wallet, money, watch, ring, and belt.
The three men then got back in the car and traveled east on highway 98 toward Perry. They stopped at a roadside park west of Perry, the same one where the skeletal remains of the deceased were later found. Smith testified that Rogers at this point wanted to go to the bathroom but was too nervous to do so. The three men then climbed over a fence at the back of the wayside park and walked into the woods where again they sat down and talked. At trial Smith testified that at this point he took the gun and asked appellant to take the car and get more beer. When appellant returned, Smith got in the car and said, "Let's go." Rogers at this time was still beyond the fence, in the woods. When appellant asked Smith where Rogers was, Smith told him that Rogers had run away into the woods. Then, Smith testified, he and appellant departed the area in Rogers' car. At this point in Smith's testimony, the prosecuting attorney asked to address the court out of the hearing of the jury.
Smith was testifying as the state expected him to up until the point when he said that appellant had left the wayside park for the purpose of getting more beer. Based upon Smith's pre-trial statements to law enforcement officers and prosecuting attorneys *384 and in a defense deposition, the state expected him to testify that appellant shot Rogers behind the roadside park. So, the state asked that Smith be called as a witness by the court, arguing that because of the surprise change of testimony, the state no longer wanted to vouch for Smith's credibility and wanted to be able to lead, cross-examine and impeach him. The court granted the request.
After being assured of use immunity by the state's counsel, Smith testified as the court's witness, saying that during appellant's absence he, Smith, shot Rogers. Smith said that when appellant returned, Smith got in the car and they left, and that he told appellant that Rogers had escaped. Thus, according to Smith's direct testimony appellant knew nothing about the murder. The state, over the defendant's objection, then proceeded to impeach Smith by confronting him with his pre-trial statements to the effect that appellant had shot Rogers and asking him whether he remembered making the prior statements. In each instance Smith acknowledged that he had made the statements.
Appellant argues that it was improper to call Smith as the court's witness and that it was improper to allow the state to impeach him by quoting from his pre-trial statements. Appellant also argues that without the improper use of the prior inconsistent statements as substantive evidence, there was insufficient evidence to support the verdict of guilt of murder in the first degree and that his motions for judgment of acquittal should therefore have been granted.
In addition to the evidence already mentioned, there was also testimony that during the period of July 23 to July 27, 1976, appellant and Smith were seen in possession of a 1969 blue and white Chevrolet automobile which the jury could have concluded was the one belonging to Rogers. The search of a motel room in Gainesville, Florida on July 27, 1976, at which time appellant and Smith were occupying the room, produced a .38 caliber revolver. A bullet found in the sand directly beneath the skeletal remains of the deceased, it was proved, could have been fired from the gun found in the motel room.
It is within the discretion of the court to call a witness as a court's witness on motion of a party on the ground that the witness has become uncooperative, McCloud v. State, 335 So.2d 257 (Fla. 1976), or because the moving party does not wish to vouch for the credibility of the witness, Enmund v. State, 399 So.2d 1362 (Fla. 1981), reversed on other grounds, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), or because the party previously calling the witness has been surprised at trial by the testimony given, Lowe v. State, 130 Fla. 835, 178 So. 872 (1937). Appellant argues, however, that what transpired at trial was improper and unfair. Appellant relies upon cases holding that it is improper to allow impeachment by prior inconsistent statements to be presented to the jury as substantive evidence. We conclude that what these authorities say is that a witness may not be impeached by prior inconsistent statements merely because the witness failed to provide the testimony the party calling him desired or expected. However, if the witness becomes adverse by providing testimony that is actually harmful to the interests of the party calling him, then impeachment by prior inconsistent statements is permissible. Hernandez v. State, 156 Fla. 356, 22 So.2d 781 (1945); Lowe v. State, 130 Fla. 835, 178 So. 872 (1937); Adams v. State, 34 Fla. 185, 15 So. 905 (1984); McCloud v. State, 354 So.2d 407 (Fla. 4th DCA), cert. dismissed, 358 So.2d 132 (Fla. 1978); Williams v. State, 353 So.2d 956 (Fla. 1st DCA 1978); Pitts v. State, 333 So.2d 109 (Fla. 1st DCA 1976); Jones v. State, 273 So.2d 8 (Fla. 3d DCA 1973); Gibbs v. State, 193 So.2d 460 (Fla. 2d DCA 1967).
In the present case, after testifying as a witness for the state that he and appellant abducted and robbed Rogers and discussed what to do with him, Smith said that they abandoned him in the bushes behind the roadside park. At this point Smith had at least failed to give desired *385 testimony. Claiming surprise, the state asked that Smith be called as a witness by the court so that the state could ask leading questions and cross-examine. As a witness for the court, Smith testified that he alone had killed Rogers. At this point Smith had clearly become an adverse witness and had given testimony that was harmful to the state's case. While impeachment by prior statements is not proper when a witness merely fails to give the expected testimony, it is proper when the witness becomes adverse. Thus here it was not improper to allow the prosecutor to confront Smith with his prior statements. Nor was it improper for the state to impeach Smith by quoting the precise language of his prior statements. Such references were a correct method of laying a predicate for the introduction of the prior statements. Urga v. State, 104 So.2d 43 (Fla. 2d DCA 1958). Since Smith admitted making the statements, their introduction by independent testimony was unnecessary.
Appellant also argues that allowing the prosecutor to quote portions of Smith's pretrial statement was improper in that the prosecutor was thereby able, under the guise of impeachment, to introduce Smith's out-of-court declarations as evidence of the matters declared, i.e., as evidence that appellant shot Rogers, in violation of the rule laid down in Adams v. State and Lowe v. State. In this case, however, the court granted defense counsel's request for a special instruction to the jury that prior inconsistent statements were only to be considered as being relevant to the credibility of the witness impeached and could not be taken as proof or evidence of the defendant's guilt. The purpose of allowing evidence of prior inconsistent statements is to counteract the effect of testimony harmful to the interest of the impeaching party. Hernandez v. State. In Rankin v. State, 143 So.2d 193 (Fla. 1962), cited by appellant, the witnesses did not give testimony harmful to the state's case, but merely failed to give desired testimony. The prior inconsistent statements were used not for impeachment but as substantive evidence of the matters contained therein and therefore were improper. See Pitts v. State; Sutton v. State, 239 So.2d 644 (Fla. 1st DCA 1970). The present case is very different in that Smith's testimony was harmful to and contradicted what the state was trying to prove. We conclude that there was no error in allowing the state to impeach Smith's credibility through prior inconsistent statements.
Appellant argues that his conviction rests upon the use of the impeachment evidence as substantive proof that he killed Rogers and that without it there is insufficient evidence to support the verdict of guilt of first-degree murder. It is clear, however, even without considering the prior statements to the effect that appellant shot Rogers, that the evidence supports the conviction on the theory of felony murder. Appellant was a principal and a direct, active participant in the robbery of Rogers. Appellant held the gun on him throughout most of the episode, including the point in time when he and Smith relieved Rogers of his valuables. Even if the jury believed Smith's testimony that he shot Rogers and that appellant was not present when he did so, the jury could still have found that appellant was actually or constructively present, directly participating in or aiding and abetting the commission of the underlying felony of robbery. Since the robbery and subsequent flight from the scene resulted in or included murder, appellant, as a principal in the robbery, is guilty of first-degree murder. Enmund v. State, 399 So.2d 1362 (Fla. 1981), reversed on other grounds, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982); Adams v. State, 341 So.2d 765 (Fla. 1976), cert. denied, 434 U.S. 878, 98 S.Ct. 232, 54 L.Ed.2d 158 (1977); Pope v. State, 84 Fla. 428, 94 So. 865 (1922).
We agree with appellant, however, that the evidence, exclusive of any substantive use of the prior inconsistent statements, does not support a finding that he shared in the "premeditated design to effect the death" of Clifton Rogers. § 782.04(1)(a), *386 Fla. Stat. (1975). The fact that Smith and appellant discussed killing Rogers and that later it was done by Smith is a circumstance that might tend to support the conclusion that appellant aided, abetted, counseled, hired, or otherwise procured the commission of the murder. If such fact is proven then the accused can be considered a principal of the first degree "whether he is or is not actually or constructively present at the commission of such offense." § 777.011, Fla. Stat. (1975). Appellant's shrugging of his shoulders when Smith suggested killing Rogers is another circumstance from which a premeditation concurrent with that of the actual perpetrator might be inferred. The prior inconsistent statements of Smith, properly understood as impeachment of his credibility, might also contribute factual inferences by persuading the jury to believe parts of Smith's testimony, but to disbelieve other parts. But at best the factual inference that appellant shared in the premeditated design is supported purely by circumstantial evidence.
"When circumstantial evidence is relied upon to convict a person charged with a crime, the evidence must not only be consistent with the defendant's guilt but must also be inconsistent with any reasonable hypothesis of his innocence." Mayo v. State, 71 So.2d 899, 904 (Fla. 1954). Under the evidence in this case, we cannot say that the circumstances, which were consistent with premeditation on the part of appellant, were also inconsistent with any reasonable hypothesis of lack of premeditation. We therefore conclude that appellant's conviction for first-degree murder is grounded upon the felony murder statute.
Appellant argues that the trial court erred in admitting into evidence color photographs of the victim's skeletal remains. We find that the photographs were relevant to corroborate testimony about the circumstances of the murder and the identity of the victim, and were therefore admissible. See Bauldree v. State, 284 So.2d 196 (Fla. 1973); State v. Wright, 265 So.2d 361 (Fla. 1972).
Appellant argues that the court erred in refusing to instruct the jury on second-degree felony murder. We disagree.
The statutory scheme does not allow for the conviction of second degree felony murder of either the one who kills or his co-felons who are present. Only an accessory before the fact who was not personally present during the commission of the underlying felony can be found guilty of second degree felony murder under the applicable statute.
State v. Jefferson, 347 So.2d 427, 429 (Fla. 1977). Since there was no evidence that appellant was not present during the commission of the underlying felony, the court did not err in refusing to instruct the jury on second-degree felony murder.
Appellant also argues that the trial court erred in failing to instruct the jury on all the elements of the underlying felony of robbery. The state contends that because there was no request or objection pertaining to the instruction, the asserted error is non-reviewable. We will address appellant's contention, however, because it goes to a matter concerning the fundamental fairness of the trial and therefore need not have been raised by a contemporaneous objection. State v. Jones, 377 So.2d 1163 (Fla. 1979).
Where a murder defendant is prosecuted on alternate theories of premeditation and felony murder, there must be an instruction defining the underlying felony with sufficient definiteness to assure the defendant a fair trial. It is not necessary, however, to instruct on the elements of the underlying felony with the same particularity as would be required if the defendant were charged with the underlying felony. State v. Jones, 377 So.2d 1163 (Fla. 1979); Vasil v. State, 374 So.2d 465 (Fla. 1979), cert. denied, 446 U.S. 967, 100 S.Ct. 2945, 64 L.Ed.2d 826 (1980); Robles v. State, 188 So.2d 789 (Fla. 1966). Our review of the record reveals that there was no reversible error in the jury instruction.
*387 Appellant argues that the judgment and sentence are invalid because a prospective juror was improperly excused for cause based upon his views about capital punishment. The record shows, however, that the venireman in question held views which irrevocably committed him against any consideration of death as a possible punishment. See Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).
Regarding sentence, appellant contends that it is constitutionally improper under the facts of this case to apply the death penalty to him. He relies upon Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), and, by notice of supplemental authority, upon the recent decision in Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982).
We have already concluded that appellant's conviction for first-degree murder rests upon the felony murder rule because the evidence was not sufficient to show that appellant joined in the intent of Smith to kill Rogers. In Enmund v. Florida, the United States Supreme Court held that the Eighth Amendment does not permit imposition of the death penalty on a person participating in a felony during which a murder is committed but who does not himself kill, attempt to kill, intend that a killing take place or intend or contemplate that lethal force will be used. 458 U.S. at 797, 102 S.Ct. at 3376. In the present case the trial court's findings of fact in support of the sentence of death do not specifically discuss evidence of the extent of appellant's involvement in the murder and the events leading up to the murder. Without such findings of fact by the trial court, we have no basis for concluding that appellant's sentence of death meets the Enmund test. Therefore, it is necessary that the case be remanded to the trial court to consider whether the death penalty may be applied in this felony murder case.
Because we remand the case for further proceedings before the trial judge, sitting without a jury, on the matter of sentence, we need not address appellant's numerous other contentions regarding the sentencing procedure and the sentence of death.
The judgment of conviction of murder in the first degree is affirmed. The sentence of death is vacated and the case is remanded to the trial court for a new non-jury proceeding on the question of an appropriate sentence under section 921.141, Florida Statutes (1975), taking into consideration the requirements of Enmund v. Florida.
It is so ordered.
ALDERMAN, C.J., and ADKINS and EHRLICH, JJ., concur.
OVERTON, J., dissents with an opinion in which McDONALD, J., concurs.
OVERTON, Justice, dissenting.
I dissent from the majority opinion insofar as it permits the state to use a state witness's prior inconsistent statements as substantive evidence of appellant's guilt. The majority opinion essentially changes the established law concerning a party's impeachment of its own witness and the subsequent use of prior inconsistent statements as substantive evidence.
Under the law of this state, it is clear that a codefendant's prior inconsistent statements cannot be used as substantive evidence of a defendant's guilt. See Rankin v. State, 143 So.2d 193 (Fla. 1962); Adams v. State, 34 Fla. 185, 15 So. 905 (1894); Perry v. State, 356 So.2d 342 (Fla. 1st DCA), cert. denied, 364 So.2d 889 (Fla. 1978); Pitts v. State, 333 So.2d 109 (Fla. 1st DCA 1976).
The record clearly reflects that the codefendant's prior inconsistent statements, which were read before the jury, were used by the prosecutor as substantive evidence to obtain appellant's conviction. Such use was improper notwithstanding the supposedly curative instruction given to the jury that the statements were to be considered solely for the purpose of determining the credibility of the witness being impeached. I recognize that the codefendant's testimony caught the state by surprise, but that does not allow the use of impeachment *388 evidence as evidence in chief. To allow this evidence to be so used was error and was prejudicial to appellant in the trial of this cause. See Hall v. State, 381 So.2d 683 (Fla. 1979).
I agree with the majority that there was sufficient competent evidence of appellant's complicity in the robbery-murder, other than the impeachment evidence, upon which a jury could properly convict appellant. I conclude, however, that a new trial must be granted in order to eliminate the prejudicial effect of the inadmissible evidence.
McDONALD, J., concurs.