498 So.2d 906 (1986)
Clinton Lamar JACKSON, Appellant,
v.
STATE of Florida, Appellee.
No. 66510.
Supreme Court of Florida.
November 26, 1986.
Rehearing Denied December 11, 1986.
*907 James Marion Moorman, Public Defender, Tenth Judicial Circuit and W.C. McLain, Asst. Public Defender, Chief, Capital Appeals, Bartow, for appellant.
Jim Smith, Atty. Gen., and James H. Dysart and Frank Migliore, Jr., Asst. Attys. Gen., Tampa, for appellee.
BARKETT, Justice.
This is an appeal from convictions for robbery and first-degree murder and a sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We reverse and remand for a new trial.
Appellant was charged with the robbery of a hardware store and the murder of its owner. The evidence indicated that when the store owner grappled with appellant's brother in an effort to keep the last five dollars remaining in the cash register, appellant shot and killed him. Only one shot was fired. Appellant challenges his convictions on three separate grounds and his sentence on several others.
Appellant's first allegation of error concerns the trial court's decision, pursuant to the state's motion, to call appellant's mother as a court witness. After she had been sworn, she testified, in response to the prosecutor's question, that her son had not admitted to her that he had robbed the hardware store and killed its owner. The state anticipated this very testimony as it was consistent with her earlier sworn deposition testimony. The sole purpose of the state's motion to have appellant's mother called as a court witness was to provide the state the opportunity to place before the jury (under the guise of impeachment) the subsequent testimony of a police officer who said that the mother had told him that *908 her son had admitted his guilt. There is no question that, standing alone, the officer's testimony would be inadmissible. The introduction of the officer's testimony under the guise of "impeachment" under these convoluted circumstances makes his testimony no more admissible.
We are cognizant of the general rule which permits the trial court to call a witness as a court witness if his or her expected testimony conflicts with prior statements.[1]See Delanie v. State, 362 So.2d 689, 690 (Fla. 2d DCA 1978). See also McCloud v. State, 335 So.2d 257, 260 (Fla. 1976). That general rule, however, has been clarified by this Court's recent opinion in Brumbley v. State, 453 So.2d 381 (Fla. 1984). In Brumbley, we held that a party may not impeach a court's witness with prior inconsistent statements unless that witness's in-court testimony proves adverse, i.e., "actually harmful," to the impeaching party. Id. at 384. We explained that the "purpose of allowing evidence of prior inconsistent statements is to counteract the effect of testimony harmful to the interest of the impeaching party." Id. at 385. See also Hernandez v. State, 156 Fla. 356, 366-67, 22 So.2d 781, 785-86 (1945) (on rehearing). Implicit in being considered harmful to the interest of the impeaching party is that the testimony of the witness is relevant, material, and necessary to the factual question in issue. Indeed, in practically every Florida case where a witness has been called as a court witness, that witness has been an eyewitness and therefore able to provide direct, firsthand knowledge of the facts pertaining to the transaction in question. Brumbley, 453 So.2d at 383-84 (participant and eyewitness to the murder); McCloud, 335 So.2d at 259-60 (eyewitness to the crime); Daugherty v. State, 154 Fla. 308, 308, 17 So.2d 290, 290 (1944) (eyewitness); Olive v. State, 131 Fla. 548, 549, 179 So. 811, 812 (1938) (eyewitness); Morris v. State, 100 Fla. 850, 852, 130 So. 582, 584 (1930) (eyewitness); Brown v. State, 91 Fla. 682, 688-90, 108 So. 842, 844-45 (1926) (eyewitness); Delanie, 362 So.2d at 690 (victim and eyewitness of the crime); Chapman v. State, 302 So.2d 136, 137-38 (Fla. 2d DCA 1974) (accomplice and eyewitness to the crime). But see Williams v. State, 353 So.2d 956 (Fla. 1st DCA 1978) (not an eyewitness). See also Buchanan v. State, 95 Fla. 301, 116 So. 275 (1928) (unclear if eyewitness); Matera v. State, 218 So.2d 180 (Fla. 3d DCA) (unclear if court witness was eyewitness), cert. denied, 225 So.2d 529 (Fla.), cert. denied, 396 U.S. 955, 90 S.Ct. 424, 24 L.Ed.2d 420 (1969).
In the case at bar, appellant's mother had no firsthand knowledge of the commission of the crime. She was not present and was not involved. In short, she had no information that would impact upon the state's case regarding the commission of the crime. The sum and substance of her testimony at trial was simply that her son had not told her that he had committed the crime. We fail to see how that testimony is relevant much less adverse to the state's case. The sleight of hand used to admit otherwise inadmissible evidence is clearly exposed when one examines the mother's testimony separately from that of the police officer. Neither side would be permitted to place a witness on the stand merely to say that they knew nothing of the event in question. The testimony of the mother to the effect that her son did not admit his guilt to her cannot be considered relevant to the issue of guilt or adverse to any aspect of the case having been presented by the state. We note that she did not provide an alibi or say that appellant told her that he did not commit the crimes. She merely testified that her son had never told her that he was guilty; she did not affirmatively testify to the defendant's innocence. Accordingly, regardless of who called her, the mother's testimony was inadmissible.
*909 Moreover, we agree with our sister courts in New Jersey and Illinois which held under very similar circumstances that the concept of impeachment cannot be used in this manner to admit the police officer's otherwise inadmissible testimony. People v. Johnson, 333 Ill. 469, 165 N.E. 235 (1929); State v. Ross, 80 N.J. 239, 403 A.2d 457 (1979). Our holding in this regard is also consistent with the well-established evidentiary principle that counsel may not "get in through the back door that which he could not have gotten in through the front door." See Perry v. State, 356 So.2d 342, 344 (Fla. 1st DCA), cert. denied, 364 So.2d 889 (Fla. 1978). The officer's recitation of the statement purportedly made by appellant's mother was hearsay and, therefore, inadmissible as substantive evidence. Counsel's introduction of that testimony under the guise of impeachment was little more than a thinly veiled artifice to place before the jury that which would be otherwise inadmissible. See generally Foremost Dairies, Inc. v. Cutler, 212 So.2d 37, 40 (Fla. 4th DCA 1968). We have held that such sham impeachment of a non-adverse witness by introduction of that witness's prior statements "as substantive evidence through the mouth of another witness" is "nothing more than the veriest hearsay, and is inadmissible." Jackson v. State, 451 So.2d 458, 462 (Fla. 1984) (quoting Adams v. State, 34 Fla. 185, 195-96, 15 So. 905, 908 (1894)). We agree with appellant's contention that the trial court erred in allowing the state to introduce the police officer's testimony regarding the mother's prior unsworn statement.
However, the erroneous admission of both the mother's and policeman's testimony was preceded by the initial error in permitting the mother to be called as a court witness. Permitting a court to abandon its position of neutrality by calling a witness as its own was intended to prevent the manifest injustice which might occur if the testimony of an eyewitness to a crime was not placed before the jury because of the inability of either party to vouch for that witness. We believe that court witnesses should be limited to those situations where there is an eyewitness to the crime whose veracity or integrity is reasonably doubted.
Appellant next complains that the trial court erroneously permitted the state to impeach a key defense witness, David Shorey, by discussing the details of a murder committed by that witness. During cross-examination of Shorey, the prosecutor asked: "You're living [in state prison], because you pled guilty to first degree murder, because you were charged with beating an old man with a pipe?" Over defense counsel's immediate objection, the trial court allowed the prosecutor to continue questioning Shorey concerning the details of the prior homicide. Appellant contends that the trial court erred by permitting this questioning. We agree.
Preliminarily, neither party disputes that a witness may be impeached by reference to a prior conviction. See § 90.610, Fla. Stat. (1985). The underlying specifics of the crime, however, may not be presented to the jury. See Fulton v. State, 335 So.2d 280, 284 (Fla. 1976); McArthur v. Cook, 99 So.2d 565, 567 (Fla. 1957); Sneed v. State, 397 So.2d 931, 933 (Fla. 5th DCA 1981). Because the prosecutor in the instant action highlighted the details of the witness's crime, the questioning was improper and should not have been admitted.
Appellant's third allegation of error concerns the improper admission of a prosecution witness's prior consistent statements in an effort to buttress that witness's credibility. State witness Freddie Williams, a co-prisoner with appellant, testified at trial that he overheard appellant admit to robbing the store and killing the owner. A Detective Kappel was subsequently permitted to testify about his pre-trial conversation with Williams wherein Williams told him that which Williams testified to at trial.
Appellant argues that Kappel's recitation of Williams' prior consistent statements was improper. Again, we agree. It is well settled that a witness's prior consistent statements are generally inadmissible to corroborate that witness's testimony. *910 See, e.g., Van Gallon v. State, 50 So.2d 882 (Fla. 1951); Hendrieth v. State, 483 So.2d 768, 769 (Fla. 1st DCA 1986); McRae v. State, 383 So.2d 289, 292 (Fla. 2d DCA 1980). An exception to the rule is recognized, however, when such statements are "introduced to rebut an express or implied charge against the witness of improper influence, motive, or recent fabrication." Gardner v. State, 480 So.2d 91, 93 (Fla. 1985). The state argues that Williams' prior consistent statements were in fact introduced to rebut defense counsel's suggestion that Williams' testimony stemmed from an improper motive  namely, to curry favor with the state regarding his own imminent prosecution.
We find the exception noted in Gardner to be inapplicable to the facts of this case. As noted in McElveen v. State, 415 So.2d 746, 748 (Fla. 1st DCA 1982), "[t]he exception involving impeachment by bias or corruption or improper motive is only applicable where the prior consistent statement was made `prior to the existence of a fact said to indicate bias, interest, corruption, or other motive to falsify.'" Accord Kellam v. Thomas, 287 So.2d 733, 734 (Fla. 4th DCA 1974). See also Parker v. State, 476 So.2d 134, 137 (Fla. 1985). Here, the record indicates that defense counsel intimated, while cross-examining Williams, that the witness had an improper motive for falsifying the facts from the very moment he learned of the hardware store robbery. Thus, his prior consistent statements were made after, not before, the alleged motive to falsify had arisen. The exception discussed in Gardner is therefore inapplicable to the case at bar. The witness's prior consistent statements were erroneously admitted.
We conclude that the combined prejudicial effect of these errors effectively denied appellant his constitutionally guaranteed right to a fair trial. Accordingly, we reverse his conviction and remand for a new trial.
Because we are reversing appellant's convictions, it is not necessary for us to address his arguments concerning his sentencing. We choose to do so, however, for the benefit of the trial court should appellant be reconvicted.
First, appellant contends that the trial court incorrectly found that the homicide was especially heinous, atrocious, or cruel.[2] We agree. In State v. Dixon, 283 So.2d 1, 9 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974), we held that "[w]hat is intended to be included [under the especially heinous, atrocious or cruel factor] are those capital crimes where the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital felonies... ." See also Proffitt v. Wainwright, 685 F.2d 1227 (11th Cir.1982) (interpreting Florida law), cert. denied, 464 U.S. 1002, 104 S.Ct. 508, 78 L.Ed.2d 697 (1983); Blanco v. State, 452 So.2d 520 (Fla. 1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 940, 83 L.Ed.2d 953 (1985). In the case at bar, there were no additional acts indicative of such cruelty. The victim was killed by a single bullet in his side. Although the murder was certainly reprehensible, it does not rise to the level of heightened cruelty required for application of the aggravating circumstance in question.
Moreover, the trial court justified its finding that the murder was especially cruel by reference to a plurality of patently improper factors. These factors included the fact that the victim was married; ran the store alone; had led an honest and good life; would be missed by the community; was an immigrant who had made a good life; and was a kind and likeable man. The trial court erred by considering these factors. The lifestyle, character traits, and community standing of the victim are not relevant to the determination of whether a given homicide was especially heinous, atrocious, or cruel. In light of the facts revealed in the record on appeal, we conclude that there is no evidentiary basis for a finding that the murder was especially heinous, atrocious, or cruel.
We further agree that the trial judge incorrectly found that the homicide *911 was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification.[3] The record is void of the kind of evidence indicative of the heightened premeditation necessary for application of the aggravating circumstance at issue. The trial court justified its finding on the grounds that appellant had planned the robbery and had shot the victim. In Hardwick v. State, 461 So.2d 79, 81 (Fla. 1984), cert. denied, 471 U.S. 1120, 105 S.Ct. 2369, 86 L.Ed.2d 267 (1985), we held that an intent to rob is not indicative of heightened premeditation: "The premeditation of a felony cannot be transferred to a murder which occurs in the course of that felony for purposes of this aggravating factor." In addition, it is well established that the heightened degree of premeditation required by this aggravating factor exceeds that necessary to support a finding of premeditated murder. See Preston v. State, 444 So.2d 939, 946 (Fla. 1984).
Appellant's convictions are reversed, and the matter remanded for new trial.
It is so ordered.
ADKINS, OVERTON, EHRLICH and SHAW, JJ., concur.
McDONALD, C.J., and BOYD, J., dissent.
NOTES
[1] In 1976, this general rule permitting court witnesses was codified and can now be found in the Florida Evidence Code, section 90.615, Florida Statutes, to wit:

90.615 Calling witnesses by the court
(1) The court may call witnesses whom all parties may cross-examine.
[2] See § 921.141(5)(h), Fla. Stat. (1985).
[3] See § 921.141(5)(i), Fla. Stat. (1985).