ON MOTION FOR REHEARING
PER CURIAM.
Upon reappraisal of the facts, we now conclude the original opinion was incorrect and reverse and remand for new trial.
This is the defendant’s fourth trial for the same murder. In light of Sayan v. State, 381 So.2d 363, 364 (Fla. 4th DCA 1980) (“After a mistrial, a case stands as if it had never been tried and the defendant is subject to being tried again on the same charge.”), we do not say appellant should have been discharged on double jeopardy grounds; but the fact that there were three prior mistrials, two of them because of hung juries, suggests there was something less than an airtight case against the defendant.
Two weeks after the incident, two witnesses to the aftermath of the shooting of Alvin Braziel picked appellant’s photograph from a photo lineup as a picture of the person they saw running from the scene of the crime. The first of these witnesses, Fannie Shepherd, was in her home nearby when she heard about three shots. She looked out her window and saw a man run by with a gun. He was tall, had a full head of hair, and his skin was perhaps “kind of *120 brown.” He stopped for “just moments” and talked to someone else in the street. She got a view of him when he turned around and looked back down the street. She could not see the actual site of the shooting from her vantage point.
Ms. Shepherd’s daughter Sadie said she heard the shots as she was walking out the door of the house. She ran back into the house and looked out of the window. She saw the man running down the street with a gun. She saw his face when he turned around. When she picked appellant’s picture out of the photo lineup, she knew that was the picture her mother had chosen. Sadie also identified the appellant at trial as the man she had seen running down the street.
A third witness told a somewhat different story. Larry Washington said he was walking out of a friend’s home at the time and date in question, when he heard a shot. He got on his bike, and when he got to the corner of 28th Avenue he saw appellant chasing another man. The other man fell to the ground, and appellant stood over him and fired at him at least three more times.
At the time of the shooting, Larry Washington was on probation for auto theft. His probation was subsequently revoked because of another auto theft. He was also facing charges for armed burglary, three other burglaries and grand theft. In exchange for his testimony in the instant case, the state had agreed that Washington was to serve only one year in jail and be on five years’ probation for all the charges against him.
The defense had the testimony of two witnesses who were present and of one prior trial witness, all of whom said that appellant was not the killer, but that they saw a white man running away after the shooting began. Another witness who had given testimony at a prior trial had testified that appellant had been with him repairing a car on the day of the incident. The police officer who arrested appellant testified that appellant told him he had been working on a car by himself the whole day of the incident.
We are called upon to consider whether it should have been determined that it was reversible, not harmless, error for the court to call Willie Mae Johnson Hardin and Ellis Vaughn, also known as Fats Junior, as court witnesses, and then to allow the state to impeach them with prior inconsistent statements as though they were adverse witnesses.
Ms. Hardin — at that time Ms. Johnson— had given a police detective a statement after the homicide, and had testified before the grand jury. She had claimed to be an eyewitness to the crime, and had identified appellant from his picture as the gunman. Because she had subsequently repudiated this testimony, the state asked that she be called as a court’s witness, so that both sides could cross examine her. The court agreed.
Ms. Hardin testified she had known the murder victim for nearly sixteen years. She also testified that Larry Washington had been visiting her home that day. She was watching television in her front room when she heard a couple of shots. She kept watching television for a while — less than five minutes — before going out to call her young nephews, who were outside. She testified at trial that she saw many people outside, but she did not see anyone with a gun, nor did she see anyone run by her house, nor did she see appellant. Along with others she went down the street toward where the homicide victim lay. She said she did not recognize him at the time because of all the blood and the people around blocking her view. The state attorney then confronted her with answers she had given to the detective who took her statement two or three days after the homicide, reading to her (and the jury) inter alia the detective’s question, “Okay, what did you see?” and her answer:
“Okay. I seen these two black males running down the street towards 27th Avenue, towards my house. I seen one dude, the boy — the man that was behind him. He shot this Alvin and Alvin fell, and then he stand, you know, over him, and shot about two or three more times. And then he come running down the street in front of my house with a gun in *121 his hand, and then he just looked at me. And then he just kept running down on the corner.”
At trial she also denied being outside the house at the time of the shooting, as she had said in the statement to the detective. When confronted with things she had previously said, in some instances she denied saying them; in others, she did not deny saying them, but said only she did not remember saying them. Ultimately, she said she identified appellant’s picture in a photo lineup because someone told her which picture to pick. She was also questioned about her grand jury testimony, which she also could not remember. When cross-examined by the defense, she said Fats Junior and Larry Washington, known to her as Squirrel, had told her what to say to the detective. She also said she had gone to the state attorney’s office some time after the grand jury hearing to tell him to make a correction because what she had told him was what someone had told her to say, and she wanted to square the record. She said she was told by the state attorney, Fats and Squirrel that she would go to jail if she changed her testimony. She was nevertheless testifying as she was, she said, because she had not seen the crime take place.
The other court witness, Ellis Vaughn, also known as Fats Junior, testified that on the day of the incident he was a passenger in a car when he saw someone run from the scene with a big, black object in his hand, but he did not know what the object was. Subsequently he saw a green car creeping along, and he got into the car and threw it in park. Appellant has a green car, but the witness said he did not recognize the car as the appellant’s. The state then questioned the witness about his earlier statement to the police that he had seen John London running down the street with a big, ugly black gun, and that the car he stopped was John’s; and about the fact he picked John’s picture from a photo lineup. Vaughn could not remember the content of his statement to the police, and said he had picked John’s picture from two pictures, not from the whole lineup of six pictures now being shown him. The witness said the officer asked him to pick out John, not to pick out the person he saw running down the street. Vaughn also could not remember what he had said on prior occasions in court.
We think the following excerpt from Brumbley v. State, 453 So.2d 381, 384 (Fla.1984), states the pertinent law:
It is within the discretion of the court to call a witness as a court’s witness on motion of a party on the ground that the witness has become uncooperative, McCloud v. State, 335 So.2d 257 (Fla.1976), or because the moving party does not wish to vouch for the credibility of the witness, Enmund v. State, 399 So.2d 1362 (Fla.1981), reversed on other grounds, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), or because the party previously calling the witness has been surprised at trial by the testimony given, Lowe v. State, 130 Fla. 835, 178 So. 872 (1937). Appellant argues, however, that what transpired at trial was improper and unfair. Appellant relies upon cases holding that it is improper to allow impeachment by prior inconsistent statements to be presented to the jury as substantive evidence. We conclude that what these authorities say is that a witness may not be impeached by prior inconsistent statements merely because the witness failed to provide the testimony the party calling him desired or expected. However, if the witness becomes adverse by providing testimony that is actually harmful to the interests of the party calling him, then impeachment by prior inconsistent statements is permissible. Hernandez v. State, 156 Fla. 356, 22 So.2d 781 (1945); Lowe v. State, 130 Fla. 835, 178 So. 872 (1937); Adams v. State, 34 Fla. 185, 15 So. 905 (1984) [sic (1894) ] McCloud v. State, 354 So.2d 407 (Fla. 4th DCA), cert. dismissed, 358 So.2d 132 (Fla.1978); Williams v. State, 353 So.2d 956 (Fla. 1st DCA 1978); Pitts v. State, 333 So.2d 109 (Fla. 1st DCA 1976); Jones v. State, 273 So.2d 8 (Fla. 3d DCA 1973); Gibbs v. State, 193 So.2d 460 (Fla. 2d DCA 1967).
In Jackson v. State, 498 So.2d 906, 908 (Fla.1986), the Florida Supreme Court clari *122 fied the above by stating that “[i]mplicit in being considered harmful to the interest of the impeaching party is that the testimony of the witness is relevant, material and necessary to the factual question in issue.” The Jackson court indicated it is error for a court to abandon its position of neutrality by calling as a witness of its own anyone other than an eyewitness to the crime whose veracity or integrity is reasonably doubted. Id. at 909.
Applying Jackson and Brumbley, we shall not say that it was improper to call Ms. Hardin as a court witness, and to permit impeachment of her trial testimony by her earlier statements. Ms. Hardin had claimed to be an eyewitness to the crime, and her trial testimony is at least arguably adverse to the state.
We do, however, rule that Mr. Vaughn should not have been called as a court witness or impeached by his prior statement. Mr. Vaughn had never claimed he was an eyewitness to the crime. Moreover, we do not think his trial testimony was adverse to the state. In such circumstances, as, for example, Parnell v. State, 500 So.2d 558 (Fla. 4th DCA 1986), review denied, 509 So.2d 1119 (Fla.1987), indicates, Vaughn’s prior inconsistent statement should not have been used to impeach his trial testimony.
Nor can we say that the error was harmless, as we are unable to conclude beyond a reasonable doubt, given the character of the total testimony and evidence placed before the jury, that the trial testimony and impeachment of Mr. Vaughn did not contribute to the conviction. See State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986).
ANSTEAD and GLICKSTEIN, JJ., concur.
GUNTHER, J., dissents without opinion.